1997 ME 50

**Russell IRISH, et al.**

v.

**Gregory GIMBEL.**

Supreme Judicial Court of Maine.

Argued Jan. 7, 1997.

Decided March 18, 1997.

Gerald F. Petruccelli (orally), Petruccelli & Martin, Portland, Paul R. Dumas, Jr. (orally), Peter J. Kaynor, Joyce, Dumas, David & Hanstein, P.A., Mexico, C. Donald Briggs, Cloutier & Briggs, P.A., Rockport, for plaintiffs.

Christopher D. Nyhan (orally), Penny Littell, Preti, Flaherty, Beliveau & Pachios, L.L.C., Portland, for defendant.

Andrew Ketterer, Attorney General, Peter J. Brann, Asst. Atty. Gen. (orally), Augusta, for amicus curiae State.

Richard L. O'Meara, Murray, Plumb & Murray, Portland, for amicus curiae Maine Trial Lawyers Association.

Before WATHEN, C.J., and GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiffs Russell and Laurie Irish, husband and wife, and their minor child, Shane, appeal from an adverse judgment entered in the Superior Court (Cumberland County, *Saufley J.*) on a jury verdict in their medical malpractice action against defendant, Gregory Gimbel, M.D. On appeal plaintiffs present several constitutional challenges to the prelitigation screening process required for claims of medical malpractice by 24 M.R.S.A. § 2851–2859 (1990 & Supp.1996). Although we uphold the constitutionality of mandatory screening, we conclude that the court's application of section 2857(1) [1] in this case, requiring admission of the panel's findings "without explanation", violated plaintiffs' constitutional right to a jury trial. Accordingly, we vacate the judgment. In order to assist the parties and the trial court, we also address those evidentiary rulings challenged in plaintiffs' appeal and defendant's cross-appeal that are likely to recur in a new trial.

[¶ 2] The procedural history and the facts presented at trial may be summarized as follows: Defendant, a physician practicing obstetrics, delivered Shane Irish on May 15, 1987, at a hospital in Brunswick. Nearly two years later, on March 16, 1989, plaintiffs filed a notice of claim, pursuant to 24 M.R.S.A. § 2903 (1990 & Supp.1996), alleging negligence in the course of the delivery resulting in a brachial plexus palsy of Shane's right upper arm along with "potential audiological deficiencies and esotropia." A prelitigation

---

1. If the findings of the prelitigation screening panel are:

As to either question under section 2855 (negligence or causation), unanimous and unfavorable to the claimant, the findings, without explanation, shall be admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed.

24 M.R.S.A. § 2857(1)(B).

screening panel was appointed[2] and the parties engaged in prehearing discovery until August of 1991. After a hearing held in October of 1991, the three-member screening panel unanimously ruled that defendant's acts or omissions "did not constitute a deviation from the applicable standards of care."[3]

[¶ 3] Plaintiffs then proceeded with this action in the Superior Court alleging that Shane Irish suffered physical and mental injuries proximately caused by defendant's negligence.[4] In May of 1993, before trial, plaintiffs filed a second notice of claim alleging that defendant's negligence resulted in a brain injury in addition to the brachial plexus injury. Plaintiffs alleged the existence of a brain injury that they had not been aware of and that was evidenced by recent neurological tests. They contended that the brain injury was caused by a deprivation of oxygen when Shane was stuck in the birth canal. On defendant's motion to dismiss, the court (*Lipez J.*) found that the brain injury claim presented a new theory of negligence that plaintiffs failed to present to the prelitigation screening panel. Applying *res judicata* principles, the court held that the panel's determination on the first claim barred a second claim. The court left open the possibility that, at the trial, plaintiffs could present evidence of brain injury if related to the theory of negligence set forth in their first notice of claim.

[¶ 4] Before trial, plaintiffs moved for permission to present testimony with respect to the brain injury and requested a jury instruction that the negative findings of the screening panel could not be considered in assessing defendant's liability for that injury. The trial judge determined that the brain injury was not related to the theory of negligence considered by the screening panel and denied the motion.

[¶ 5] The court also denied plaintiffs' pretrial motions challenging the constitutionality of the screening process. Plaintiffs sought the exclusion of the findings of the panel from evidence or, in the alternative, an instruction that the findings should be afforded *less* weight than any other evidence in the case. At trial, the panel findings were admitted as evidence, and the court made the following preliminary remarks to the jury:

> It is important for you to understand that you are not bound by the findings of the panel. You are the final decision makers in this case. However, in your deliberations at the close of this case, you may consider those findings as you would any other evidence that may be presented in this trial. You may give those findings whatever weight you find is appropriate.

The court restricted counsel to "comments that do not go essentially beyond my comments" and prohibited counsel from informing the jury that their ability to comment on this particular piece of evidence was restrict-

---

2. The Chief Justice of the Superior Court, once notified of the receipt of a notice of claim by the clerk of the Superior Court, selects a retired justice or judge, a person with judicial experience, or other qualified person, from a list of such persons maintained by the clerk, to serve as chair of the screening panel. 24 M.R.S.A. § 2852(2)(A). The clerk then provides the chair with lists of health care practitioners, health care providers, and attorneys, recommended by the professions involved, to serve on screening panels. 24 M.R.S.A. § 2852(1), (2)(B). The chair chooses two or three additional panel members from these lists. The chair must choose one attorney and one health care practitioner, in the specialty or profession of the person accused if possible. 24 M.R.S.A. § 2852(2)(B)(1), (2). The appointment of a panel member may be challenged by the parties for cause. 24 M.R.S.A. § 2852(3).

3. The panel is authorized to determine negligence, causation, and comparative negligence.

24 M.R.S.A. § 2855. The finding in this case was issued in the form of a Decree signed by the panel members, each answering "no" to the following question:

> Whether there is a reasonable medical professional probability that the acts or omissions complained of or found by the Panel to exist (or as agreed to by the Parties) constitute a deviation from the applicable standards of care by the health care practitioner or health care personnel charged with the care?

*See also* 24 M.R.S.A. § 2855(1)(A).

4. The complaint specifically alleged that defendant: 1) failed to properly monitor the baby in utero, 2) failed to use reasonable diagnostic measures to determine the fetal position and condition of the baby, 3) failed to conduct a reasonable delivery, and 4) failed to perform a Caesarean section.

ed. The court permitted defendant to display an enlarged copy of the finding to the jury on a 3′ × 4′ poster and to refer to the panel as a "neutral panel," but denied defendant's request to be permitted to identify the panel members or their professions.[5] At the conclusion of the trial, the court provided the following instructions with reference to the panel finding:

> Also in evidence in this case are the findings of the pre-litigation screening panel. I remind you you are the final decision-makers in this case. The panel findings are not binding upon you. You may consider them with all of the other evidence that has been introduced at this trial.

The jury found no negligence and plaintiffs now appeal from the judgment entered in favor of defendant.

### I. The Constitutional Challenges

[¶ 6] In attacking the constitutionality of the prelitigation screening panel statute, plaintiffs bear the heavy burden of overcoming our presumption that the statute is constitutionally valid. They must demonstrate convincingly that the statute conflicts with the Constitution. *State v. McGillicuddy*, 646 A.2d 354, 355 (Me.1994). All reasonable doubts must be resolved in favor of the constitutionality of the statute. *Portland Pipe Line Corp. v. Environmental Improvement Commission*, 307 A.2d 1, 11 (Me.1973). Moreover, if a constitutional infirmity is proven, and the statute is susceptible of more than one interpretation, "we must adopt an interpretation, if one there be, which will render it constitutional." *Id.*

### A. Right to a Jury Trial

[¶ 7] Plaintiffs contend that the statute violates their right to a trial by jury as secured by the Maine Constitution:

> In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases

where it has heretofore been otherwise practiced....

Me. Const. art. I, § 20. A party has a right to a jury trial in all civil actions unless it is affirmatively shown that jury trials were unavailable in such a case in 1820. *DesMarais v. Desjardins*, 664 A.2d 840, 844 (Me.1995).[6] Although plaintiffs presented their case to a jury, they argue that the statute and the court's instructions interfered with the jury's fact-finding function and effectively deprived them of their right to a trial by jury. They contend that the mandatory admission of unanimous findings "without explanation" prevents effective impeachment of the findings and results in juror deception, thereby hindering the jurors' ability to properly weigh the evidentiary significance of the findings. They claim the right to impeach the findings of the panel by informing the jury of the procedural and evidentiary flaws of the panel process through examination of the panel members and argument.

[¶ 8] The issue may be simply stated. Is the statutory screening process, as applied in this case, inconsistent with the constitutional right to a jury trial? We have stated that a litigant's right to a jury trial, in general, means the right "to have a determination made by the jury" on material questions of fact. *Peters v. Saft*, 597 A.2d 50, 53 (Me.1991) (upholding a cap on tort damages). Similarly, the United States Supreme Court has stated that the right to a jury trial mandates "that the ultimate determination of issues of fact by the jury be not interfered with". *In re Peterson*, 253 U.S. 300, 309, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920). Unquestionably, however, the rules of evidence and trial procedures are not immutable, and the bounds of permissible interference are a question of degree.

[¶ 9] In its seminal decision in *Peterson*, the Supreme Court rejected a Seventh Amendment challenge to a court order ap-

---

**5.** The finding was admitted as defendant's exhibit # 1 in the form of a decree containing the signatures of the panel members. The signatures, however, were not very legible. The decree did not identify the professions of the panel members. The panel was comprised of a retired judge, a physician, and an attorney in accor-

dance with 24 M.R.S.A. § 2852 (1990 & Supp. 1996).

**6.** Defendant does not dispute that a right to a jury trial existed in 1820 in medical malpractice actions.

pointing an auditor to investigate facts, hear witnesses, and file a report expressing the auditor's opinion on disputed issues of fact. The Court held that the admission of the auditor's report would not unduly interfere with the jury's determination of the facts. "The parties will remain as free to call, examine, and cross-examine witnesses as if the report had not been made." *Id.* at 311, 40 S.Ct. at 546.[7] The Court observed that the right to a jury trial does not "require that old forms of practice and procedure be retained . . . nor does it prohibit the introduction of new rules of evidence." *Id.* at 300, 40 S.Ct. 543. The Court also noted that in *Meeker v. Lehigh Valley R.R. Co.*, 236 U.S. 412, 35 S.Ct. 328, 59 L.Ed. 644 (1915), it held that a statute making an auditor's report *prima facie* evidence in a jury trial was a "legitimate exercise of legislative power over rules of evidence and in no wise inconsistent with the constitutional right of trial by jury." *Peterson*, 253 U.S. at 311, 40 S.Ct. at 546. The *Meeker* Court stated:

> This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents.

*Id.* at 430, 35 S.Ct. at 335.[8]

[¶ 10] A majority of the courts considering this issue have upheld prelitigation screening statutes against the right to a jury trial challenge. These courts have consistently applied the rationale and language in *Peterson* and *Meeker*, and have analogized the screening panel to a court appointed auditor. *See e.g. Barrett v. Baird*, 111 Nev. 1496, 908 P.2d 689, 694–695 (1995); *Comiskey v. Arlen*, 55 A.D.2d 304, 390 N.Y.S.2d

122, 126 (1976).[9] Many of the statutes that have been upheld have provisions similar to those attacked by plaintiffs in the Maine statute. *See supra Barrett*, 908 P.2d at 694–695 (no infringement of jury fact-finding role when admission of panel findings based on inadmissible evidence is mandated and cross-examination of panel members is barred). Plaintiffs contend that the statutes upheld by other courts contain safeguards not found in the Maine statute; they permit court instructions informing the jury of the limitations of the panel proceedings, and they permit direct or indirect impeachment of the panel findings by argument and comment, or in some statutes, by cross-examination of panel members. Plaintiffs suggest that the mandatory admission of unanimous findings "without explanation" is unique to Maine and is a "fatal flaw" because it prevents the court from instructing the jury about the findings and it prevents the parties from attacking the findings. Thus, the jury is left with nothing but the bare findings and is denied any basis for evaluating credibility or comparative weight.

[¶ 11] We agree that such a prohibition, as applied by the court in this case, withholds information that is essential to the jury's fact-finding role. The court instructed the jurors that they were not bound by the findings and should give the findings whatever weight they thought appropriate. This admonition rings hollow when the jurors are deprived of any and all information of the context in which the panel operates. To deepen the mystery, the court barred the parties from informing the jury they were restricted from commenting on the findings. The total absence of information and the unexplained silence of plaintiffs' counsel in the face of the highly prejudicial findings invited unprincipled evaluation and can only result in juror confusion. We must now de-

---

7. *See also Howard v. Kimball*, 65 Me. 308, 327 (1876), finding no error in jury instructions stating that an "auditor's report was *prima facie* evidence of the amount which the plaintiff was entitled to recover . . ."

8. In *Howard v. Kimball*, 65 Me. 308, 328 (1876), we discussed the effect of a pre-trial auditor's report on jury *deliberation* and stated: "The results reached by the auditor are not conclusive upon the parties, but his report when offered in

evidence is subject to be impeached, rebutted, controlled or disproved by competent evidence to be laid before the jury."

9. At least one court has found that the admission of panel findings at trial created an impermissible burden on the right to a jury trial because it "effectively and substantially reduces a party's ability to prove his case." *Simon v. St. Elizabeth Medical Center*, 355 N.E.2d 903 (Ohio 1976).

termine to what extent the court's prohibition must be relaxed in order to protect the jury's constitutional role.

■ [¶ 12] We begin by rejecting plaintiffs' contention that the integrity of the jury's function depends on plaintiffs' ability to attack the findings by argument or cross-examination of panel members. The constitutional deficiency lies in the lack of relevant neutral information, not the restriction on skillful advocacy. We determine that a jury will be able to perform its function if the court makes preliminary comments and final instructions that provide the following information:

1) the panel process is merely a preliminary procedural step through which malpractice claims proceed;

2) the panel in this case consisted of (the name and identity of the members);

3) the panel conducts a summary hearing and is not bound by the Rules of Evidence;

4) the hearing is not a substitute for a full trial and may or may not have included all of the same evidence that is presented at the trial;

5) the jury is not bound by the finding(s) and it is the jurors' duty to reach their own conclusions based on all of the evidence presented to them; and

6) the panel proceedings are privileged and confidential. Consequently, the parties may not introduce panel documents or present witnesses to testify about the panel proceedings, and they may not comment on the panel finding(s) or proceedings except to reiterate the information in 1 through 6.

This information provides a basis for the jury to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial. In short, the purposes of the screening statute will be preserved, the jury's fact-finding role will be preserved, and plaintiffs' right to a jury trial will be protected.

[¶ 13] Can section 2857 be construed to permit the disclosure of information constitutionally required? If the statute is susceptible of more than one reasonable interpretation, it is our duty to adopt an interpretation, if there is one, that is consistent with the constitution. *Portland Pipe Line Corp. v. Environmental Improvement Commission*, 307 A.2d 1, 15 (Me.1973). The trial court interpreted the statute to prohibit any explanation. In *Sullivan v. Johnson*, 628 A.2d 653 (Me.1993), we rejected the suggestion that section 2857 requires admission of the panel findings with absolutely no comment, and we pointed out the appropriateness of preliminary comments by the court. As in *Sullivan*, we must read the statute as a whole and harmonize the disclosure provision with the confidentiality provision and the legislative purpose of encouraging pretrial resolution of medical malpractice claims. *Id.* at 655–656.

Section 2857 is "[t]he statutory mechanism for encouraging the settlement, withdrawal or dismissal of claims". *Sullivan*, 628 A.2d at 656. Admission of panel findings is mandated only when the panel unanimously determines that a plaintiff or defendant possesses a meritless claim or defense. Pretrial resolution is encouraged by the specter of mandatory admission of the findings free from attack by the opposing party. This inducement will not be negated by the constitutionally required disclosure of neutral information. No matters held confidential by the statute are disclosed, and the findings remain unexplained by either party. Accordingly, we construe the statute to permit the disclosure of information about the prelitigation screening process sufficient to provide a rational basis for evaluation of the findings and to ensure the jury's role as the final arbiter of the facts. As so interpreted, the statute is a legitimate exercise of legislative power consistent with the constitutional right of a trial by a jury. *Peterson*, 253 U.S. at 311, 40 S.Ct. at 546.

■ [¶ 14] Because the statutory scheme assigns such a potentially crucial and central role to the unanimous finding, we are compelled to address the propriety of permitting defendant to display a 3′ × 4′ blow-up of the finding to the jury. "The court in its discretion may condition, restrict or exclude the use of any illustrative aid to avoid the risk of unfair prejudice, surprise, confusion or waste of time." M.R.Evid. 616(b). The exercise of

discretion pursuant to Rule 616(b) "is similar to the discretion exercised by the court under Rule 403 in dealing with objects which are admissible in evidence." Advisory committee's note, Field & Murray, *Maine Evidence*, 6–103 (3d ed. 1992 & Issue 1 1993). The display of the poster, throughout the trial and over plaintiffs' objection, had no illustrative value and resulted in an unfair level of prejudice, particularly when the court did not allow the jury any other information about the panel proceeding. Consequently, the court abused its discretion in permitting the use of the poster as an illustrative aid.

### B. Other Constitutional Challenges

[¶ 15] Plaintiffs argue that the statute violates the separation of powers mandate of the Maine Constitution [10] by interfering with the trial court's authority to conduct trials. They argue that the statute forces the court to admit panel findings that are based on "incompetent evidence." [11] We have already stated that section 2857 was not "intended to deprive a trial court of its inherent power to protect the integrity of the judicial process". *Sherburne v. Medical Malpractice Prelitigation Screening Panel*, 672 A.2d 596, 597 (Me.1996). The Legislature has the authority to regulate rules of evidence, *Warren v. Waterville Urban Renewal Authority*, 235 A.2d 295, 304 (Me. 1967), and has exercised its authority by regulating the admissibility of evidence pursuant to the statute. Plaintiffs argument that the Legislature has created a "court" not authorized by the Constitution is equally unavailing. The screening panel is an "agency" of the courts but is not a court or quasi-judicial tribunal because it "has no power to adjudicate the rights of any of the parties before it." *Sherburne*, 672 A.2d at 598.

[¶ 16] Next, plaintiffs argue that the statute unconstitutionally denies access to the courts in violation of the open courts provision of the Maine Constitution.[12] Our Constitution requires that "the courts must be accessible to all persons alike without discrimination ... and afford a speedy remedy for every wrong." *Maine Medical Center v. Cote*, 577 A.2d 1173, 1176 (Me.1990). The Legislature, however, may erect reasonable procedural requirements for exercising the right to an adjudication. *Giberson v. Quinn*, 445 A.2d 1007, 1009 (Me.1982).[13]

[¶ 17] Plaintiffs argue that the panel process is unduly burdensome and causes unconscionable delay. That delay results primarily from the availability of discovery in the panel process. Discovery benefits both parties and is substantially under their control.[14] The parties may also use this discovery at the subsequent trial.[15] In the present case, the panel chair was appointed within a week of the filing of the notice, but the

---

10. "The powers of this government shall be divided into 3 distinct departments, the legislative, the executive and the judicial." Me. Const. art. III, § 1. "No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted." Me. Const. art. III, § 2.

11. "The Maine Rules of Evidence shall not apply (at the panel hearing). Evidence shall be admitted if it is the kind of evidence upon which reasonable persons are accustomed to rely in the conduct of serious affairs." 24 M.R.S.A. § 2854 (1990).

12. "Every person, for an injury inflicted on the person ... shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay." Me. Const. art. I, § 19.

13. The Health Security Act's statute of limitations restrictions on access to the courts has been upheld in *Cote*, 577 A.2d at 1176 (absence of tolling provision for legal disability), and in *Choroszy v. Tso*, 647 A.2d 803, 806 (Me.1994) (absence of discovery rule).

14. "The chair, upon application of a party, may permit reasonable discovery." 24 M.R.S.A. § 2852(6). "The Maine Rules of Civil Procedure govern discovery conducted under this subchapter. The chair has the same authority to rule upon discovery matters as a Superior Court Justice." 24 M.R.S.A. § 2857(3).

15. "Notwithstanding subsection 1, in a subsequent Superior Court action all discovery conducted during the prelitigation screening panel proceedings is deemed discovery conducted as a part of that court action." 24 M.R.S.A. § 2857(3).

parties engaged in discovery for more than the next two years.

[¶ 18] A majority of courts that have addressed right of access challenges to medical malpractice screening panels have upheld the statutes. *See Houk v. Furman,* 613 F.Supp. 1022, 1034 (D.Me.1985) (upholding the now-repealed 90–day notice provision of the Act); *see also* Jean A. Macchiaroli, *Medical Malpractice Screening Panels: Proposed Model Legislation to Cure Judicial Ills,* 58 Geo. Wash.L.Rev. 181, 207 (1990). We agree with these courts and hold that the statute establishes reasonable procedural requirements that do not violate the open courts provision of the Maine Constitution.

[¶ 19] Plaintiffs also argue that the prelitigation screening process violates the equal protection provisions of the United States and Maine Constitutions by creating an arbitrary distinction between medical malpractice victims and all other tort victims. We have held that medical malpractice plaintiffs are not a suspect class and do not possess a fundamental right to pursue their causes of action. *Choroszy v. Tso,* 647 A.2d 803, 808 (Me.1994). Therefore, we apply the rational relationship test to plaintiffs' challenge. The stated purpose of the statute is "to expedite the resolution of medical liability claims in order to decrease the high costs of medical professional liability insurance." *Maine Medical Center v. Cote,* 577 A.2d 1173, 1176 (Me.1990) (quoting L.D. 2065, Statement of Fact (112th Legis.1986)). The explicit purpose of the prelitigation screening process is to encourage early resolution of professional negligence claims that merit compensation and to encourage early withdrawal or dismissal of claims that lack merit. *Sullivan,* 628 A.2d at 656 (citing 24 M.R.S.A. § 2851(A) & (B)). Plaintiffs have failed to demonstrate that the prelitigation screening procedures have no rational relationship to the stated legislative purpose.[16]

## II.   Evidentiary Issues

We address the following evidentiary issues because they are likely to recur, even though they are mooted by our order for a new trial. *Woolley v. Henderson,* 418 A.2d 1123, 1128 (Me.1980)

### A.   Brain Injury Claims

[¶ 20] Plaintiffs argue that the court erred in excluding expert evidence pertaining to the alleged brain injury, and in refusing to instruct the jury that the panel findings may not be considered in assessing the brain injury claim. We conclude that *it was error to exclude the evidence* but reject the proposed instruction.

[¶ 21] The court premised its evidentiary ruling on a finding that the brain injury claim was not related to the negligence claim presented to the panel. We find no competent evidence in the record to support this finding. Although the alleged brain and arm injuries were caused by different mechanisms, they arose from the same alleged acts and omissions of defendant. Plaintiffs allege that difficulties passing through the birth canal caused cervical nerve damage resulting in brachial plexus palsy in the right upper arm. They also allege that being stuck in the birth canal caused a deprivation of oxygen resulting in the brain injury. Both injuries and the mechanisms generating them are alleged to have been proximately caused by defendant's failure to recognize the risks of a difficult birth and to perform a Caesarean section.[17]

[¶ 22] It was this alleged negligence that the panel reviewed and rejected at its hearing. The panel is not authorized to determine damages, and because it found no negligence, it did not address the issue of causation. Therefore, plaintiffs' failure to present the brain injury claim to the panel does not result in the trial of an unscreened claim. Evidence of the brain injury is relevant to plaintiffs' complaint and it was er-

---

**16.** Plaintiffs' due process challenge raises no issues that have not been fully addressed.

**17.** Although there may be additional negligent acts implicated in the arm injury (failure to use

standard techniques in the physical delivery), all of the alleged negligent acts implicated in the brain injury (failure to identify risk factors and to perform a Caesarean) are implicated in the arm injury and were reviewed by the panel.

ror to exclude it.[18]

**[¶ 23]** Plaintiffs' requested instruction, however, is without merit. The panel found that defendant's acts and omissions, those that allegedly caused the arm *and* the brain injury, did not involve a deviation from the applicable standard of care. Therefore, plaintiffs are not entitled to an instruction that the negative panel finding may not be considered in evaluating the brain injury claim.

### B. Cross-examination of Defendant's Expert

**[¶ 24]** Plaintiffs contend that the court abused its discretion by excluding evidence of a prior law suit brought by plaintiffs' attorney, in his individual capacity, against defendant's expert medical witness. The prior suit involved the attorney's child and was settled out of court. Allegedly, it involved a brachial plexus injury occurring under circumstances similar to those alleged in the present action. The court properly excluded any reference to the involvement of plaintiffs' attorney in the prior suit. Such evidence is a clear appeal for jury sympathy likely to distract jurors from the relevant issues at trial. The court, however, also excluded all evidence of the prior suit, even without reference to plaintiffs' attorney, because the suit was settled without an admission of liability. The court permitted general questions about the expert's professional experience with similar injuries, and questions asking if the expert had ever been sued and if he resents suits against physicians.

**[¶ 25]** We determine that the excluded evidence was relevant to a crucial issue, bias or interest, and if admitted, could have had a controlling influence on a material aspect of the case, i.e. whether defendant deviated from the applicable standard of care. In *Hayes v. Manchester Memorial Hosp.*, 38 Conn.App. 471, 661 A.2d 123 (1995), the court found an abuse of discretion in excluding evidence of a similar suit brought against an expert witness physician.

The court reasoned that it would be against the expert's interest to testify to a deviation of care in circumstances similar to those giving rise to his own liability. As the *Hayes* court stated: "The evidence excluded goes to the principal issue to be resolved by the jury, whether the duty of the defendants to conform to the applicable standard of care was breached...." *Id.*, 661 A.2d at 126.

**[¶ 26]** Contrary to defendant's contention, the risk of unfair prejudice to defendant does not outweigh the probative value of the evidence. Unfair prejudice is that which is likely to cause the jury to "consciously or unconsciously, base its verdict on something other than the established propositions in the case." Field & Murray, *Maine Evidence*, § 403.1 at 4–16 (3d ed. 1992 & Issue 1 1993). The risk is that the jury will assume that the expert was negligent in the prior case, and then transfer that result to the present case. This concern, however, is sufficiently addressed by instructing the jury, if requested, that liability in the prior suit is irrelevant, and that the prior suit may be considered only on the issue of interest or bias.

**[¶ 27]** Plaintiffs also contend that the court abused its discretion by excluding evidence relating to the same medical witness's involvement with defendant's insurer, his lobbying efforts to reduce insurance rates, and his common financial interest with defendant (both have the same insurance carrier). The court permitted cross-examination on the witness's lobbying efforts for tort reform in general, and his review of cases for defendant doctors without reference to insurers.

**[¶ 28]** Insurance information is generally treated as "immaterial, prejudicial and inadmissable". *St. Pierre v. Houde*, 269 A.2d 538, 540 (Me.1970). This rule, codified in M.R.Evid. 411, does not necessarily compel the exclusion of insurance information when it is relevant to show the bias or the interest of a witness. The prejudicial effect is nevertheless present, and exclusion under Rule 403 is available when the unfair prejudice is found to exceed the probative value of

---

**18.** We do not address whether the principles of *res judicata* are applicable to the pretrial screening process.

the evidence. Field & Murray, *Maine Evidence,* § 411.1 at 4–91 (3d ed. 1992 & Issue 0 1992). In the circumstances of this case, by permitting general questions to expose the expert's interest in medical malpractice defense and in malpractice tort reform, while excluding references to insurance, the court struck a proper balance pursuant to Rule 403, and did not abuse its broad discretion in limiting cross-examination.

### C. Plaintiffs' Illustrative Aid

[¶ 29] Defendant contends that the court abused its discretion, pursuant to M.R.Evid. 616(b), by permitting plaintiffs' use of a large poster as an illustrative aid. The poster presented a list of birthing risk factors encased in a brightly colored traffic warning sign. Defendant contends the posters were of an "assailing nature, attacking the jury with innuendos of liability and wrongdoing." The format of the poster serves no legitimate purpose, but rather dramatizes the list of risk factors in a way that appeals to emotion instead of reason. Applying the same test that we applied to defendant's blow-up of the panel findings, we conclude that the court abused its discretion in permitting the use of the poster.

### D. Voir Dire

[¶ 30] To avoid raising the issue of insurance before the jury, the court denied plaintiffs' proposed voir dire questions and jury questionnaire designed to detect juror exposure to campaigns to lower insurance costs by reforming tort law. The court asked the following general questions designed to detect bias and prejudice about tort liability:

Q. In recent years and months there have been more advertisements by lawyers seeking to find clients to file lawsuits. Is there anyone here who has been so offended by those that you might have difficulty being fair and impartial in a civil matter where money damages are being sought? ... I see no affirmative responses.

Q. Also in recent years there's been much public discussion of issues such as tort reform and problems with the court system. Is there anyone here who feels strongly about these issues or who belongs to any organization supporting tort reform or supporting plaintiffs' rights? And I see no affirmative responses.

[¶ 31] Plaintiffs specifically proposed questions about a series of full page advertisements appearing in a Portland newspaper in April and May of 1995. The advertisements complained about "outrageous" jury awards and "excessive legal judgments" resulting in "staggering liability costs" that are "emptying our pockets and hurting our lives." Plaintiffs argue that the full page newspaper advertisements are false and misleading, and that they are part of a concerted effort by the insurance industry to "poison the well" by creating juror prejudice against tort victims and high jury verdicts. They contend that the court unfairly prevented them from uncovering juror prejudice created by these advertisements.

[¶ 32] A trial court has broad discretion in determining whether a subject has been adequately addressed by voir dire, and its determination will be upheld absent an abuse of that discretion. *State v. O'Hara,* 627 A.2d 1001, 1003 (Me.1993). The court's voir dire questions addressed plaintiffs' concerns while appropriately avoiding direct references to insurance. The decision to permit voir dire questions suggesting to the jury that defendant is insured is within the discretion of the trial court, but "is to be avoided unless extraordinary special circumstances require it." *Duguay v. Pomerleau,* 299 A.2d 914, 916 (Me.1973). Plaintiffs have not shown circumstances requiring questions more detailed than those posed by the court.

[¶ 33] The remaining issues raised by plaintiffs and defendant are without merit and require no further discussion.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with the opinion herein.