2007 ME 72

**James Edward SMITH et al.**

v.

**Catherine HAWTHORNE, M.D.**

Supreme Judicial Court of Maine.

Argued: Jan. 17, 2007.
Decided: June 7, 2007.

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for plaintiffs.

George C. Schelling, Esq. (orally), Gross, Minsky & Mogul, P.A., Bangor, for defendant.

Christopher C. Taintor, Esq., Norman, Hanson & DeTroy, LLC, Portland, for amicus curiae Maine Medical Ass'n.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

Majority: SAUFLEY, C.J., and CLIFFORD, CALKINS, and LEVY, JJ.

Concurrence: SAUFLEY, C.J., and CLIFFORD, J.

Concurrence: LEVY, J.

Dissent: ALEXANDER and SILVER, JJ.

CALKINS, J.

[¶ 1] Catherine Hawthorne, M.D., appeals from a judgment entered in the Superior Court (Hancock County, *Mead, J.*) in favor of James Edward and Sheryl Smith, following a jury trial on the Smiths' complaint for professional negligence. Hawthorne contends that the court erred in admitting into evidence the findings of the prelitigation screening panel that (1) Hawthorne deviated from the applicable standard of medical care in treating James Smith; and (2) the acts or omissions by Hawthorne did not cause Smith's injury. We vacate the judgment.

## I. BACKGROUND

[¶ 2] This proceeding began, as medical malpractice cases generally must begin, with a notice of claim and a prelitigation screening panel. *See* 24 M.R.S. §§ 2851–2859 (2006). The panel unanimously found that (1) Hawthorne deviated from the applicable standard of medical care in treating James Smith; (2) the deviation did not proximately cause Smith's injury; and (3) Smith's negligence was not greater than or equal to Hawthorne's. With regard to its first finding, the panel specifically found that Hawthorne had deviated from the standard of care regarding only one of four allegations in the notice of claim. The allegation on which the panel unanimously found that Hawthorne had deviated from the standard of care stated:

> The wound at the fracture site was leaking from a sore at three months. Dr. Hawthorne failed to have a culture taken, a sedimentation rate done, or antibiotics administered. This open wound continued through December of 1997 and, at that time, there was a high index of suspicion of infection reflected in the x-rays. Despite all of these indications, Dr. Hawthorne did not adequately treat this patient for suspected osteomyelitis at that time.

[¶ 3] There have been three jury trials in this matter. The first ended in a mistrial. The second resulted in a verdict for Hawthorne and led to our opinion in *Smith v. Hawthorne (Smith I)*, 2006 ME 19, 892 A.2d 433. In *Smith I*, we vacated the judgment because the court had admitted into evidence only the second finding of the panel, that is, the finding that Hawthorne's "acts or omissions complained of by the Smiths were not the legal cause of the injuries that [Smith] has alleged." *Smith I*, 2006 ME 19, ¶¶ 6, 25, 892 A.2d at 435, 439–40. In *Smith I*, a majority of the Court held that when a court admits the causation finding, it is required to admit the negligence finding as well. *Id.* ¶ 25, 892 A.2d at 439–40. That majority split on the rationale, with two justices determin-

---

* Justice Howard H. Dana Jr. sat at oral argument and participated in the initial confer-
ence but retired before this opinion was certified.

ing that the constitutional right to a jury trial requires both findings to be admitted if any finding is admitted, *id.* ¶ 22, 892 A.2d at 439; and two justices concurring, but preferring to interpret 24 M.R.S. § 2857(1) to require all unanimous findings to be submitted to the jury, *id.* ¶ 34, 892 A.2d at 441 (Alexander, J., concurring).

[¶ 4] On remand, Smith requested that both the negligence and causation findings be presented to the jury. Hawthorne objected and requested that no findings be given to the jury. The trial court granted Smith's request.

[¶ 5] At the beginning of the trial, the court allowed Smith's counsel to make the following statement to the jury:

> The Pre-litigation Screening Panel unanimously found that the wound at the fracture site was leaking from a sore at three months. Dr. Hawthorne failed to have a culture taken, a sedimentation rate done or antibiotics administered. This open wound continued through December of 1997, and, at that time, there was a high index of suspicion of infection reflected in the x-rays. Despite all these indications, Dr. Hawthorne did not adequately treat this patient for suspected osteomyelitis at that time.
>
> The panel also found that the acts or omissions complained of did not proximately cause the injury complained of or as found by the panel or as agreed by the parties.

[¶ 6] The court thereafter addressed the jury with a brief explanation of the prelitigation process, as we required in *Irish v. Gimbel,* 1997 ME 50, ¶ 12, 691 A.2d 664, 671, including naming the panel members, cautioning the jury that it was not bound by the panel's findings, and explaining that the evidence the panel heard may or may not be the same evidence that the jury would be hearing.

[¶ 7] The jury eventually reached a verdict for the Smiths in the amount of $140,000 plus interest and costs.

## II. DISCUSSION

■ [¶ 8] The sole issue on appeal is whether the court erred in admitting the panel's findings over Hawthorne's objection. Hawthorne recognizes that *Smith I* requires both findings to be presented when the unanimous panel findings are favorable to the claimant on negligence, but favorable to the medical practitioner on causation, and the medical practitioner wants the jury to hear about the causation finding. Hawthorne contends, however, that because she prevailed on the causation finding, she is entitled to determine whether both findings are admitted into evidence or whether neither finding is admitted. The Smiths argue that both *Smith I* and the Health Security Act require that both findings be admitted.

■ [¶ 9] We will not here repeat the statutory scheme and case law described in *Smith I.* It is sufficient to state that neither *Smith I* nor any of our other cases have held that a constitutional right to a jury trial requires that all findings of the prelitigation screening panel be admitted into evidence. We have never held that the constitutional right to a jury trial requires that the jury be made aware of the prelitigation screening process. Smith's constitutional rights would not be violated if no evidence was allowed about the panel and its findings.

[¶ 10] We do not find that any provision of the Health Security Act requires that all of the panel's findings be presented to the jury when the unanimous panel is split between negligence and causation and the practitioner objects. Smith contends that in *Smith I,* the Court interpreted section 2857(1)(C), and particularly the word "findings," to require all unanimous find-

ings to be submitted to the jury. *See Smith I*, 2006 ME 19, ¶ 34, 892 A.2d at 441. However, five members of the Court disagreed with that interpretation. Therefore, the statutory interpretation relied upon by Smith in this case was rejected by a majority of the Court in *Smith I*. In *Smith I*, because Hawthorne had sought to admit the causation finding, we had no occasion to opine on what would happen if a claimant offered the findings and the practitioner objected. Our holding was limited to a conclusion that if one finding is admitted, both must be admitted so that the jury's fact-finding role will not be distorted. *See id.* ¶ 22, 892 A.2d at 439.

[¶ 11] The Health Security Act does not mandate that the negligence and causation findings be admitted when the findings are split and the practitioner objects. The Act, in fact, gives the defendant practitioner the choice as to whether the panel's findings will be admitted when one of the questions is answered favorably to the defendant. It provides: "If the unanimous findings of the panel as to either [negligence or causation] are in the negative, the claimant must release the claim ... or be subject to the admissibility of those findings ...." 24 M.R.S. § 2858(2).[1] Section 2858(2), with its "subject to" phrase, means that it is the defendant practitioner who chooses whether to make the claimant "subject to" the findings. If the defendant chooses not to make the claimant subject to the findings, then the findings are not admissible. Here, Hawthorne opted to not subject Smith to the panel's findings, and therefore, the findings were not admissible.

[¶ 12] The rationale behind the establishment of the prelitigation screening panel supports this interpretation of section 2858. The purpose is "[t]o identify claims

---

1. Title 24 M.R.S. § 2858 (2006), in its entirety, reads:

§ 2858. Effect of findings by panel

A unanimous finding by the panel of any claim under this subchapter shall be implemented as follows.

1. Payment of claim; determination of damages. If the unanimous findings of the panel as to section 2855, subsections 1 and 2 are in the affirmative, the person accused of professional negligence must promptly enter into negotiations to pay the claim or admit liability. If liability is admitted, the claim may be submitted to the panel, upon agreement of the claimant and person accused, for determination of damages. If suit is brought to enforce the claim, the findings of the panel are admissible as provided in section 2857.

2. Release of claim without payment. If the unanimous findings of the panel as to either section 2855, subsection 1 or 2, are in the negative, the claimant must release the claim or claims based on the findings without payment or be subject to the admissibility of those findings under section 2857, subsection 1, paragraph B.

It refers to 24 M.R.S. § 2855 (2006), which reads:

§ 2855. Findings by panel

1. Negligence and causation. At the conclusion of the presentations, the panel shall make its findings in writing within 30 days by answering the following questions:

A. Whether the acts or omissions complained of constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care;

....

B. Whether the acts or omissions complained of proximately caused the injury complained of; and

C. If negligence on the part of the health care practitioner or health care provider is found, whether any negligence on the part of the patient was equal to or greater than the negligence on the part of the practitioner or provider.

2. Standard of proof. The standard of proof used by the panel shall be:

A. The plaintiff must prove negligence and proximate causation by a preponderance of the evidence; and

B. The defendant must prove comparative negligence by a preponderance of the evidence.

of professional negligence which merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit; and ... to encourage early withdrawal or dismissal of nonmeritorious claims." 24 M.R.S. § 2851(1). The statutory scheme encourages the dismissal of nonmeritorious claims by making the plaintiff "subject to" the admissibility of the findings against the plaintiff.

■ [¶ 13] In summary, we conclude that neither the constitutional right to a jury trial nor the Health Security Act require the admission of the panel's findings when the panel has decided negligence in favor of the claimant but causation in favor of the practitioner defendant and when the defendant objects to the admission of the findings.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

SAUFLEY, C.J., with whom CLIFFORD, J., joins, concurring.

[¶ 14] I join in the analysis and result expressed by the majority opinion in this case, and I write separately to address an issue related to, but distinct from, the legal determination upon which the case before us turns.

[¶ 15] Specifically, I write separately to address the problem so clearly illustrated by the case before us. The medical malpractice screening panel provisions of the Maine Health Security Act were originally intended to create a streamlined pretrial process with a goal of limiting or eliminating frivolous litigation, thereby ultimately reducing the costs of medical care in Maine. *See* L.D. 727, Statement of Fact (108th Legis.1977). It has, unfortunately, become a cumbersome process with unpredictable results that costs both plaintiffs and defendants money and time in a way that was not intended by the Legislature.

[¶ 16] This case illustrates the point eloquently. James Edward Smith suffered what he believed was a bad outcome in the medical treatment of his ankle in 1997. He and his wife filed a claim against his doctor, Catherine Hawthorne, and others in October 1999, and a medical malpractice panel was convened. During the panel proceedings, discovery disputes arose and were resolved, including disputes about depositions and document requests. The medical malpractice panel did not file its decree with the court until November 2000, when it reported findings that the doctor had been negligent but had not caused the Smiths' injuries. The result reached by the panel could have deterred the Smiths from proceeding to trial. Presented with the panel's mixed findings, however, the Smiths elected to proceed to trial, as is their right. By the time the parties began the trial process, the panel proceedings had already consumed more than a year and a significant amount of the parties' resources.

[¶ 17] The first trial, completed in January 2004, resulted in a hung jury, requiring a second trial. *Smith v. Hawthorne (Smith I)*, 2006 ME 19, ¶ 6, 892 A.2d 433, 435.

[¶ 18] During the second trial, undertaken in April 2004, the panel findings that disfavored the Smiths were admitted against them, as anticipated by the Maine Health Security Act. *Id.; see* 24 M.R.S. § 2857(1)(C) (2006). The jury found in the doctor's favor. On appeal, the Court concluded that the disincentive to trial written into the Act, which allowed that negative finding on causation to be admitted against the Smiths without the more positive finding regarding negligence, was unconstitutional. *Smith I*, 2006 ME 19, ¶¶ 22–25, 892 A.2d at 439–40. The Court therefore vacated the jury's verdict in favor of the

doctor and remanded for another trial. *Id.* ¶ 25, 892 A.2d at 440.

[¶ 19] In the third trial of this matter, undertaken in May 2006, the doctor elected not to present that negative finding to the jury because of a now-certain knowledge that the Law Court's holding in *Smith I* would require the separate positive finding in favor of the Smiths to be presented along with the negative finding. Accordingly, the doctor moved in limine to exclude any evidence of the malpractice panel's findings. The trial court, attempting to determine how the Court would analyze this dispute, denied the motion in limine and allowed both findings to go to the jury over the doctor's objection. The jury found in favor of the Smiths.

[¶ 20] The Court has today considered whether the Legislature intended for a defendant doctor to have the option to decline to "subject" a plaintiff to a negative finding when to do so would carry to the jury additional positive findings—a possibility not anticipated by the Legislature before the Court's pronouncements in *Smith I*. A majority of the Court concludes that the statute *does* give a defendant doctor the option to determine whether findings of that sort will be admitted in evidence. I agree with that conclusion. However, a significant minority of the Court disagrees, signaling continuing difficulty in interpreting this statute.

[¶ 21] The extensive litigation in this case, which has now consumed eight years of the parties' lives, has cost untold dollars, and may result in a fourth jury trial, demonstrates that the Court's varying interpretations of the statute have undermined predictability in the statute's application. The parties and trial courts are unable to reasonably anticipate how the Court may interpret the Act as each issue comes before the Court for resolution.[2] Even the plain language of the statute no longer guides the parties, having been overwritten by the Court on multiple occasions.[3]

[¶ 22] Thus, I write separately to suggest that it is time for the Legislature to evaluate the current efficacy of the Maine Health Security Act's medical malpractice screening panel provisions as they have been interpreted, amended, augmented, and implemented over the years since their enactment. I do not pretend to understand the breadth of policy decisions or facts that ought to go into such an evaluation, and I am mindful of the reality that

---

**2.** This problem is further illuminated by the irony that, today, the dissenters suggest that the majority is reaching out to change the statute, when in *Smith I*, the very same jurists (the dissenters here) "changed" the statute by requiring the admission of an ordinarily inadmissible finding of the panel. *See Smith v. Hawthorne*, 2006 ME 19, ¶ 22, 892 A.2d 433, 439.

**3.** For example, in *Irish I*, the Court interpreted the statute's language requiring the admission of the panel findings "without comment" to require six separate statements to the jury. *Irish v. Gimbel*, 1997 ME 50, ¶ 12, 691 A.2d 664, 671. Our earlier decision in the case before us, which will now be referred to as *Smith I*, further altered the force of the statute by effectively eliminating the statutory disincentive to trial when the panel findings would have favored the physician. *Smith v. Hawthorne*, 2006 ME 19, ¶ 22, 892 A.2d 433, 439. Before the Court announced this new interpretation, the accepted practice in medical malpractice panel cases had been consistent with the clearly expressed legislative intent:

> Only when a litigant insists on proceeding to trial in the face of a unanimous and unfavorable panel finding does the statute contemplate the admission of the panel finding against a defendant who refuses to settle a meritorious claim or against a plaintiff who refuses to withdraw a claim without merit. The legislature's intent to force final disposition of these claims short of trial is apparent on the face of this statute . . . .

*Sullivan v. Johnson*, 628 A.2d 653, 656 (1993) (citation omitted).

the cases that reach the Law Court may not be representative of those cases that are resolved without appeal. However, from my perspective on this Court, it does appear that the process no longer reflects the original legislative intent, that it has become costly and cumbersome, and that the people of this state would benefit from a legislative evaluation of the medical malpractice screening panel system created by the Maine Health Security Act.

LEVY, J., concurring.

[¶ 23] I join in the Court's opinion. I write separately to address the dissenting opinion's claim that today's decision is contrary to our holding in *Smith v. Hawthorne (Smith I)*, 2006 ME 19, 892 A.2d 433, and results in a construction of 24 M.R.S. § 2858(2) (2006) that may be unconstitutional.

[¶ 24] In *Smith I*, the Smiths contended that "section 2857 is unconstitutional because it violates their right to a jury trial guaranteed by article I, section 20 of the Maine Constitution." *Id.* ¶ 1, 892 A.2d at 434. A majority of this Court agreed, concluding that the trial court's denial of the Smiths' request to admit the panel's findings on negligence and comparative negligence and its allowance in evidence of only the panel's finding on causation, "was unconstitutional and denied the Smiths their right to a jury trial under the Maine Constitution." *Id.* ¶ 25, 892 A.2d at 439–40.

[¶ 25] *Smith I* focused on the constitutionality of 24 M.R.S. § 2857 (2006) where the trial court had admitted, at Hawthorne's request, a panel finding that was unfavorable to the Smiths and had excluded the panel findings that were favorable to the Smiths. *Smith I* did not call upon us to also consider 24 M.R.S. § 2858 (2006) and determine whether a plaintiff has the right to admit the panel findings into evidence in a split-findings case over the objection of the defendant.

[¶ 26] The dissent's suggestion that today's opinion is a change in direction from *Smith I* is belied by the fact that *Smith I* did not address the meaning of section 2858(2). Section 2858, entitled, "Effect of findings by panel," governs how "[a] unanimous finding by the panel of any claim under this subchapter shall be implemented." 24 M.R.S. § 2858. Section 2858(2) is the statutory provision that is at the center of this appeal because it, not section 2857 at issue in *Smith I*, governs which party has control over the admission of split unanimous panel findings. In concluding that "nowhere in the law" is there a limitation on the admission of such findings, the dissent overlooks the actual language of section 2858(2): "If the unanimous findings of the panel [with respect to either negligence or causation] are in the negative, *the claimant must* release the claim or claims based on the findings without payment or *be subject to the admissibility of those findings."* (Emphasis added.)

[¶ 27] The dissenting opinion also suggests that the Court's construction of section 2858(2) creates a "constitutional problem." This argument was not raised in the parties' briefs.

[¶ 28] While it is beyond question that courts must construe statutes to preserve their constitutionality, *see Town of Baldwin v. Carter*, 2002 ME 52, ¶ 9, 794 A.2d 62, 66, this canon of statutory construction presumes that a court has first performed the applicable constitutional analysis, and has concluded that the statute in question is reasonably susceptible to a construction that renders it unconstitutional. The dissenting opinion's suggestion that the Court's construction of section 2858(2) creates a "constitutional problem" cannot substitute for a constitutional analysis that asks whether the classification made in

section 2858(2) for claimants against whom a panel has rendered a unanimous, adverse finding on negligence or causation, bears a rational relationship to a legitimate state end. *See Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996).

[¶ 29] Today's opinion provides little justification for the dissent's invocation of Judge Coffin's admonition against "the pyramiding of exception upon exception, or distinction upon distinction, [to create] an awesome structure of ratiocination that is medieval in its scholasticism." FRANK M. COFFIN, ON APPEAL: COURTS, LAWYERING, AND JUDGING 270 (W.W. Norton & Co.1994). As with many appeals involving questions of statutory construction, the Court's analysis interprets statutory language in the context of a specific factual record developed by the trial court, in a manner that is consistent with the statute's purpose as determined by the Legislature. "Only by seeking that purpose can we avoid the substitution of judicial for legislative will." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, — U.S. —, —, 126 S.Ct. 2455, 2474, 165 L.Ed.2d 526 (2006) (Breyer, J., dissenting).

[¶ 30] It is regrettable that, on rare occasions, the litigation of a particular claim involving a matter of great importance to the parties generates several costly and time-consuming trials and appeals before it is finally resolved. This is one of those rare cases. It would undoubtedly be more expedient for purposes of resolving the dispute between the Smiths and Dr. Hawthorne to construe the Health Security Act in the manner advanced by the dissent, but it would not be in keeping with the actual language of section 2858(2) and its legislative purpose.

ALEXANDER, J., with whom SILVER, J., joins, dissenting.

[¶ 31] The Court holds that the Superior Court erred in following the direction of our opinion issued little more than a year ago. To accomplish this, the Court reaches out to interpret the Maine Health Security Act, 24 M.R.S. § 2857(1)(C) (2006), to give negligent doctors a veto over whether unanimous findings may be presented to a jury. From this interpretation, I respectfully dissent.

[¶ 32] This appeal follows the third jury trial on the Smiths' complaint for medical malpractice. In requiring a fourth jury trial on the same cause of action, the Court will be ordering an event that may be unique in Maine jurisprudence. This case demonstrates the difficult, costly, and time-consuming burdens an individual must overcome to recover for injuries caused by negligent doctors and why it is economically impossible to seek redress for any but the most severe injuries caused by medical negligence.

[¶ 33] The jury's verdict for the Smiths of $140,000 plus interest and costs, followed our remand in *Smith v. Hawthorne* (*Smith I*), 2006 ME 19, 892 A.2d 433. Prior to the three jury trials that have already occurred, the Smiths were first required to file a notice of claim and proceed to a contested hearing before a prelitigation screening panel. 24 M.R.S. §§ 2853(1), (5), 2903 (2006). In the panel proceeding, just as in the trials, the Smiths had the burden to prove both medical negligence and causation by a preponderance of the evidence. 24 M.R.S. § 2855(2)(A) (2006).

[¶ 34] By law, the panel was required to make findings by answering three questions:

A. Whether the acts or omissions complained of constitute a deviation from the applicable standard of care by the

health care practitioner or health care provider charged with that care;

. . . .

B. Whether the acts or omissions complained of proximately caused the injury complained of; and

C. If negligence on the part of the health care practitioner or health care provider is found, whether any negligence on the part of the patient was equal to or greater than the negligence on the part of the practitioner or provider.

*Id.* § 2855(1).

[¶ 35] Use of unanimous panel findings is governed by 24 M.R.S. § 2857(1) (2006), which provides, in pertinent part:

B. If the panel findings as to both the questions under section 2855, subsection 1, paragraphs A and B are unanimous and unfavorable to the person accused of professional negligence, the findings are admissible in any subsequent court action for professional negligence against that person by the claimant based on the same set of facts upon which the notice of claim was filed.

C. If the panel findings as to any question under section 2855 are unanimous and unfavorable to the claimant, the findings are admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed.

[¶ 36] Paragraph C is the statute relevant to this appeal. It directs that if the answer to either of the first two questions is negative and unanimous, the plaintiff must release the claim or "be subject to the admissibility of those findings under section 2857[ (1)(C) ]." [4] 24 M.R.S.

§ 2858(2) (2006). Sections 2857 and 2858 do not specify or limit which party may seek to admit at trial a unanimous finding, if a claim proceeds to trial following a panel proceeding. The limitation that the Court imposes today, that unanimous findings pursuant to paragraph C are admissible only if the doctor consents, is found nowhere in the law. It violates the principle of fundamental fairness. And such a one-sided veto over admissibility was not suggested in *Smith I*.

[¶ 37] In *Smith I*, 2006 ME 19, ¶ 22, 892 A.2d at 439, we vacated and remanded for a third trial, with direction to the trial court that:

When there are findings favorable to both parties, the admission of only those findings favorable to one party distorts the jury's fact-finding role. The findings in favor of Smith, like the findings in favor of Hawthorne, were highly probative and relevant to the jury's determination of material questions of fact. The partial admission reduced the strength and persuasiveness of the Smiths' case to the jury and, at the same time, strengthened Hawthorne's case, thereby significantly infringing upon the Smiths' right to have facts determined by a jury.

[¶ 38] When we criticized the admission of only those unanimous findings favorable to the doctor as distorting the jury's fact-finding role, we did not suggest that no unanimous findings should be admitted. The trial court reasonably determined that both findings were admissible and did so based upon our holding in *Smith I*.

[¶ 39] In *Smith I*, ¶¶ 23–24, 892 A.2d at 439–40, we further held that:

---

4. Title 24 M.R.S. § 2858(2) (2006), actually references paragraph B of subsection 2857(1). However, section 2857 was significantly amended by P.L.1999, ch. 523, § 4, and as a result, the appropriate reference should be to paragraph C of subsection 2857(1).

[B]ecause both negligence and causation have to be found by a jury for there to be liability, both panel findings are relevant to the jury's deliberations. Furthermore, both findings provide the jury with a basis "to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial." *Irish I*, 1997 ME 50, ¶ 12, 691 A.2d at 671.

The jury was told only that the panel found that any acts or omissions by Hawthorne did not cause harm to Smith. Because of this, the jury could have been misled into believing that the panel found that Hawthorne was not negligent even though the panel unanimously found that she was. The partial admission of the panel's findings here, like the admission of the panel's findings without explanation in *Irish I*, invited unprincipled juror evaluation of the evidence that could only result in juror confusion. The panel's finding that Hawthorne was negligent was necessary to put into context its finding that Hawthorne's acts were not the proximate cause of Smith's injuries.

[¶ 40] With direction on remand that: "[t]he panel's finding that Hawthorne was negligent was necessary to put into context its finding that Hawthorne's acts were not the proximate cause of Smith's injuries," the trial judge's action admitting both findings was proper and respectful of our holding in *Smith I*. Nothing in *Smith I* suggested, even remotely, that the defendant doctor should control admissibility of the unanimous findings. The Court's opinion rationalizing its change in direction recalls Judge Frank M. Coffin's lament that appellate opinions sometimes have "a tendency to refine the art of distinguishing

one case from another to the point where the pyramiding of exception upon exception, or distinction upon distinction, creates an awesome structure of ratiocination that is medieval in its scholasticism." [5] Judge Coffin's concern about obscure "ratiocination" is confirmed by the four-justice majority needing three separate opinions to explain its decision.

[¶ 41] Giving the defendant doctor sole power to render the panel proceedings a nullity and prevent admission of unanimous panel findings is contrary to the legislative purpose of the Health Security Act. The Legislature's purpose was to make panel proceedings and unanimous panel findings important by utilizing them to promote settlements, section 2858, and allowing their introduction at trial of cases that do not settle, section 2857(1)(B), (C). Section 2857(1)(C), which governs admission of split unanimous findings, does not specify that the defendant alone can decide whether or not to admit the findings. Paragraph C simply states that when a panel finding on "any question" is "unanimous and unfavorable to the claimant, the findings are admissible."

[¶ 42] The Court reads into paragraph C language to authorize defendants to decide if split unanimous findings shall be admitted. The text of the statute, our precedents, and the goals and purposes of the Health Security Act do not support the Court's interpretation. We must construe a statute to preserve its constitutionality in a manner that is compatible with the Legislature's intent if such a construction is "at all possible." *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 9, 794 A.2d 62, 66–67. Thus, we must seek a reasonable interpretation of paragraph C that will satisfy constitutional requirements. *See Irish v.*

5. FRANK M. COFFIN, ON APPEAL: COURTS, LAWYERING, AND JUDGING 270 (W.W. Norton & Co.1994).

*Gimbel,* 1997 ME 50, ¶ 6, 691 A.2d 664, 669. The most reasonable, plain-meaning interpretation of paragraph C, that it does not discriminate as to who can move the admission of split, unanimous findings, avoids any constitutional problem.

[¶ 43] In *Smith I,* we held that "both panel findings are relevant to the jury's deliberations." *Smith I,* 2006 ME 19, ¶ 23, 892 A.2d at 439. On remand, the trial court followed our direction and admitted both unanimous findings at the third trial. The trial court acted appropriately. I would affirm the jury's verdict and the Superior Court's judgment.