2000 ME 120

**In re Ashley M.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 26, 2000.
Decided June 26, 2000.

Richard W. Rhoda,. Houlton, for appellant.

Andrew Ketterer, Attorney General, Patrick Downey, Asst. Attorney General, Augusta, Suzanne Russell Lilley, Asst. Dist. Atty., Houlton, for appellee.

Robert F. Ward, Houlton, Guardian ad Litem.

Richard C. Cleary, Houlton, for mother.

Before CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Pursuant to 22 M.R.S.A. § 4006 (Supp.1999), the father of Ashley M. appeals from a child protection order entered the District Court (Houlton, *Griffiths, J.*) in which the court found that the child would be in jeopardy if she was returned to the father and awarded custody of Ashley to the Department of Human Services. *See* 22 M.R.S.A. §§ 4035, 4036 (1992 & Supp.1999). The court further found the presence of an aggravating factor and ordered that the Department be relieved of any obligation to provide reunification services to the father. *See* 22 M.R.S.A. § 4036(1)(G–2) (Supp.1999).

[¶ 2] The father contends that the court erred in finding that there was an aggravating factor that justified its determination that the Department was to be relieved of any obligation to provide reunification services to him. He also argues that he was unfairly surprised that such a determination was made because the Department did not make a request that the court find an aggravating factor until the time of the child protection hearing. We affirm the judgment.

[¶ 3] Ashley was born in November of 1998. She was admitted to the hospital in February of 1999 after her father had shaken her with sufficient force to cause injury. In March of 1999, Ashley was readmitted to the hospital and diagnosed with shaken baby syndrome. At that point, the Department took custody of Ashley and petitioned for a preliminary child protection order. *See* 22 M.R.S.A. § 4032 (1992). The petition alleged that the child had been seriously injured and suffered from shaken baby syndrome. The Department further alleged that neither parent could explain the injuries and that the father had admitted to shaking the baby. In a preliminary protection order, consented to by the parents, the court ordered that custody of Ashley remain with the Department. *See* 22 M.R.S.A. §§ 4034(2), 4036(1)(F) (1992).

[¶ 4] A child protection hearing was held on June 10, 15, and 17, 1999. *See* 22 M.R.S.A. § 4035 (1992 & Supp.1999). In its child protection order the court found the following facts:

[The father], age 19 years, while caring for his 2 month old daughter Ashley … on February 7, 1999 shook the child with sufficient violence to cause sub-dural bleeding and acute and chronic retinal hemorrhaging requiring surgical intervention to relieve the retinal hemorrhaging and a sub-dural tap to relieve the increase of cerebrospinal fluid which had caused the child's head to increase 3 cm. in circumference in a period of 6 weeks. The injuries suffered by the child are typical of infants diagnosed with Shaken Baby's Syndrome, a potentially life-threatening condition. The child had also sustained several unexplained bruises while in the care of her father as well as an abrasion of her right hand. These findings reflect a pattern of reckless and violent conduct by the father toward the child which has subjected the child to life-threatening jeopardy.

[¶ 5] Finding that Ashley would be in circumstances of jeopardy if returned to her father and that the father had subjected Ashley to aggravating circumstances as defined in 22 M.R.S.A. § 4002(1–B)(A) (Supp.1999), the trial court ordered that custody remain with the Department and that the Department be relieved of its duty to provide reunification services to the father. *See* 22 M.R.S.A. §§ 4035(3), 4036(1)(G–2) (1992 & Supp.1999).

I.

[¶ 6] Pursuant to 22 M.R.S.A. § 4002(1–B)(A) (Supp.1999), a court may find the existence of an aggravating factor when:

The parent has subjected the child to aggravating circumstances including, but not limited to, the following:

(1) Rape, gross sexual misconduct, gross sexual assault, sexual abuse, incest, aggravated assault, kidnapping,

promotion of prostitution, abandonment, torture, chronic abuse or any other treatment that is heinous or abhorrent to society.

The trial court concluded that the father's conduct amounted to aggravated assault as defined in 17–A M.R.S.A. § 208 (1983). The Department agrees with that finding and also contends that the father subjected the child to treatment that is both heinous and abhorrent to society within the meaning of 22 M.R.S.A. § 4002(1–B)(A)(1) (Supp.1999).

[¶ 7] The father contends that there is insufficient evidence to support a finding of aggravated assault. We disagree. The elements of aggravated assault are defined in 17–A M.R.S.A. § 208 (1983):

A person is guilty of aggravated assault if he intentionally, knowingly, or recklessly causes:

A. Serious bodily injury to another.

[¶ 8] All of the elements of aggravated assault were present in this case. That Ashley suffered serious bodily injury is not in doubt. She has been hospitalized twice, she has suffered sub-dural bleeding. She has suffered a "[l]arge intraretinal hemorrhage" in her left eye, and she has been diagnosed with "chronic shaken impact baby syndrome." The father argues, however, that there was insufficient evidence on which to base a finding of recklessness.

[¶ 9] As support for his argument, the father notes that the Department, in its literature regarding shaken baby syndrome, states that between 25%–50% of the population is not aware of the dangers of shaking a baby. Even if we were to consider such evidence, offered as it is on appeal, the determination of recklessness is not a statistical calculation.

A person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result. . . . [T]he disregard of the risk, when viewed in light of the nature and purpose of the person's conduct and the circumstances known to him, must involve a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.

17–A M.R.S.A. § 35(3)(A), (C) (1983).

[¶ 10] A reasonable and prudent person would not forcefully shake a baby because that person would recognize that babies are fragile. Shaking a baby with the degree of force sufficient to cause shaken baby syndrome, therefore, can constitute a gross deviation from a reasonable person's standard of conduct.

[¶ 11] The father also challenges the court's finding of a "pattern of reckless and violent conduct . . . toward the child," arguing that a *pattern* of behavior requires more than one act and that the only finding that is supported by the evidence is the court's finding that he shook the baby on *one* occasion. He also disputes the finding that Ashley "sustained several unexplained bruises while in the care of her father as well as an abrasion of her right hand," arguing that finding is not supported by the evidence. The father's contentions are unpersuasive.

[¶ 12] There is medical evidence in the record to suggest that Ashley was also shaken *after* her February hospitalization. Moreover, although there was no eyewitness testimony to incidents that may have caused the bruises, circumstantial evidence adequately supports the findings of the court. The February hospitalization occurred after the father shook the baby with sufficient force to cause sub-dural bleeding and retinal hemorrhaging. At the time, doctors also noticed that Ashley had sustained several bruises and an abrasion. When Ashley was readmitted to the hospital in March, her doctor noted that

[t]he bruising at the time of the [February] hospitalization is also bruising that I believe is most consistent with non-accidental inflicted trauma, particularly the number of bruises involving the buttocks and perineal area, as well as the bruising under the chin which is particu-

larly suspicious. With regard to the lesion on the hand, although I cannot state whether this is inflicted or accidental or even speculate as to mechanism, I can state that this is not consistent with a self-inflicted scratch mark.

[¶ 13] The father stated to the police that only he, the mother, and a babysitting aunt, were ever alone with Ashley and that he knew of no other person who could have caused the child's injuries. Moreover, the father, who changed his story several times, reported that his experience as a parent was a stressful one, and he admitted to dropping the child into her crib on one occasion when he came home from work with a headache. This evidence, viewed in its entirety, adequately supports the court's finding of a "pattern of reckless and violent conduct ... toward the child" by the father, and it also supports a determination that the father subjected Ashley to aggravated assault. *See State v. Discher*, 597 A.2d 1336, 1342–43 (Me.1991).

■ [¶ 14] Such treatment of a child, in addition to constituting an aggravated assault, is both "heinous" and "abhorrent to society" within the meaning of 22 M.R.S.A. § 4002(1–B)(A)(1) (Supp.1999).[1] The evidence, therefore, supports the court's finding that there was an aggravating factor and the court's order relieving the Department of its obligation to provide reunification services to the father. *See* 22 M.R.S.A. § 4036(1)(G–2) (Supp.1999).

II.

■ [¶ 15] The father also contends that because the petition for child protection filed by the Department did not specifically include a request that the court relieve the Department of its duty to provide reu-

nification services, and because the pretrial order issued by the court pursuant to M.R. Civ. P. 16A did not mention cease reunification, he was unfairly surprised by the court's finding of an aggravating factor. He argues that the finding should be set aside and, accordingly, that the cease reunification order be vacated. We disagree.

[¶ 16] Pursuant to 22 M.R.S.A. § 4032(2) (1992), child protection petitions must contain certain information, including:

D. A summary statement of the facts which the petitioner believes constitute the basis for the petition;

E. An allegation which is sufficient for court action;

F. A request for specific court action;

. . . .

H. A statement that petition proceedings could lead to the termination of parental rights, under section 4051 *et seq.*

[¶ 17] The statute does not expressly state that the Department must make explicit in its petition a request for a finding of an aggravating factor and a cease reunification order. Moreover, the court has the statutory authority to order that reunification efforts be discontinued if the court finds the existence of an aggravating factor. *See* 22 M.R.S.A. §§ 4036(1)(G–2), 4041(2)(A–1) (Supp.1999).

[¶ 18] Pursuant to section 4032(2)(F), if the Department is aware of aggravating factors that would justify an order to cease reunification, and the Department intends to seek such an order, it should include in its child protection petition a request that the court order the Department to be relieved of any obligation to provide reunification services to the parents. That every

---

1. We are unpersuaded by the father's contention that the heinous or abhorrent to society language is unconstitutionally vague. *See Irish v. Gimbel*, 1997 ME 50, ¶ 6, 691 A.2d 664, 669 (holding that the party challenging the constitutional validity of a statute bears a heavy burden to overcome the presumption that the statute is constitutionally valid); *Shapiro Bros. Shoe Co., Inc. v. Lewiston–Auburn*

*Shoeworkers Protective Ass'n,* 320 A.2d 247, 253 (Me.1974) (holding that due process requires that a statute "provide [a] reasonable and intelligible standard[] to guide the future conduct of individuals and to allow the courts and enforcement officials to effectuate the legislative intent in applying [the law]"), *quoted in Maine Real Estate Comm'n v. Kelby,* 360 A.2d 528, 531 (Me.1976).

petition explicitly include such a request, however, is not required by the statute. The purpose of the statute is to provide parents with fair notice of the Department's intentions so that parents can adequately prepare to defend their rights. *See Security Pac. Nat'l Trust Co. v. Reid,* 615 A.2d 241, 243 (Me.1992). Here, though the Department's petition contained no explicit request to cease reunification efforts, the father's statutory and constitutional rights to notice were suitably protected.

[¶ 19] In ruling on the father's objection to the Department's request at trial that the court find an aggravating factor and the father's motion for a continuance, the court concluded that it was obvious to the father that the issue of an aggravating factor would be before the court, and it found the father's claim of surprise not to be credible. Those findings are amply supported in the record.

[¶ 20] The Department's petition alleged the very facts that formed the basis of the court's finding of an aggravating factor. On 2/7/99 DHS received a referral from the Houlton Regional Hospital regarding suspicion of child abuse in the form of Shaken Baby Syndrome.... [The] father of Ashley admitted to shaking the baby gently in an attempt to regulate her breathing.... In addition, the baby had a slightly smaller than dime size wound on her right hand, just below the index knuckle, a scratch on her upper torso, a faint bruise on her lower back torso and a brownish colored bruise on her left buttock.... [I]t was discovered that Ashley had labial bruising with an unknown cause.... On a followup on March 11, 1999, it was determined that Ashley's head had increased in circumference by 3 cm. There was an additional increase of 1 cm when measured on 3/25/99. There was also an increase in cerebrospinal fluid. Both of these findings were significant enough changes to warrant a follow-up sub-dural tap.

On 3/25/99, the Department was informed that Ashley had been found to have both acute and chronic retinal hemorrhaging. There is sub dural bleeding in the frontal area of the brain. Both are indicative of Shaken Baby Syndrome.

[¶ 21] The father was well aware of the facts alleged by the Department, and he contested them at the hearing. Although he argues that he was surprised by the aggravated factor finding and contends that the issue would require additional research, trial preparation and presentation of evidence, he cannot demonstrate what that additional evidence might be or how it would alter the court's decision.

[¶ 22] The trial court found there was no prejudice in this case. Nor has the father demonstrated any concrete prejudice resulting from the absence of an explicit cease reunification request in the Department's petition. Because we discern no error in those findings, we conclude that the notice given to the father was satisfactory.

The entry is:

Judgment affirmed.