2006 ME 19

**James Edward SMITH et al.**

v.

**Catherine HAWTHORNE, M.D.**

Supreme Judicial Court of Maine.

Argued: Jan. 13, 2005.
Reargued: Oct. 20, 2005.
Decided: March 1, 2006.

Arthur J. Greif, Esq. (orally), Julie D. Farr, Esq., Gilbert & Greif, P.A., Bangor, for plaintiffs.

George C. Schelling, Esq. (orally), Renee L. Inman, Esq., Gross, Minsky & Mogul, P.A., Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.*

Majority: DANA, ALEXANDER, CALKINS, and SILVER, JJ.

Concurrence: DANA, and ALEXANDER, JJ.

---

* Justice Paul L. Rudman sat at the first oral argument and participated in the initial conference, but retired before this opinion was certified.

Dissent: SAUFLEY, C.J., and CLIFFORD, and LEVY, JJ.

CALKINS, J.

[¶ 1] James and Sheryl Smith appeal from a judgment entered in the Superior Court (Hancock County, *Hjelm, J.*) in favor of Catherine Hawthorne, M.D., following a jury trial on the Smiths' complaint for medical malpractice. Prior to the trial, a prelitigation screening panel had unanimously determined that (1) Hawthorne deviated from the applicable standard of medical care; (2) the deviation did not cause James Smith's injury; and (3) Smith's negligence was not equal to or greater than Hawthorne's negligence. Pursuant to 24 M.R.S. § 2857(1) (2005), the court allowed in evidence the panel's finding favorable to Hawthorne, but refused to allow in evidence the panel's findings favorable to Smith. The Smiths contend that section 2857 is unconstitutional because it violates their right to a jury trial guaranteed by article I, section 20 of the Maine Constitution. We agree that subsections 2857(1)(B) and (C), as applied in this case, are unconstitutional and vacate the judgment.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

[¶ 2] Hawthorne treated James Smith for an open fracture of his left ankle, but the fracture did not heal correctly. The Smiths filed a notice of claim against Hawthorne. They alleged that Hawthorne deviated from the appropriate standard of medical care in allowing Smith's infection to go untreated and that this failure to treat Smith required him to undergo several additional operations, to miss work, and to suffer other long-term or permanent impairments. The notice of claim had the effect of initiating the prelitigation screening panel process, which is set forth in 24 M.R.S. §§ 2851–2859 (2005).

[¶ 3] The prelitigation screening panel, composed of three members, held a hearing, 24 M.R.S. § 2854 (2005), and issued findings, *id.* § 2855(1). The findings were stated in a "Malpractice Decree," consisting of three questions and answers. The first question was: "Whether the acts or omissions complained of, or found by the panel to exist, or as agreed by the parties, constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care regarding 7(c) as alleged in the Notice of Claim." The panel members unanimously answered this question, "Yes." The referenced paragraph 7(c) in the notice of claim is one of four allegations of negligence in the notice. It stated:

> The wound at the fracture site was leaking from a sore at three months. Dr. Hawthorne failed to have a culture taken, a sedimentation rate done, or antibiotics administered. This open wound continued through December of 1997 and, at that time, there was a high index of suspicion of infection reflected in the x-rays. Despite all of these indications, Dr. Hawthorne did not adequately treat this patient for suspected osteomyelitis at that time.

The screening panel placed a footnote at the end of the first question, which stated: "The panel finds no negligence on the remaining issues."

---

1. Because we agree with the Smiths that 24 M.R.S. § 2857(1) (2005) operated to violate their right to a jury trial as guaranteed by the Maine Constitution, we do not reach their additional claims that the statute violates the Equal Protection and Due Process Clauses of the United States and Maine Constitutions. U.S. CONST, amend. XIV, § 1, ME. CONST. art. I, § 6 A.

[¶ 4] The second question was: "Whether the acts or omissions complained of proximately caused the injury complained of, or as found by the Panel, or as agreed by the parties." The panel unanimously answered this question, "No." The third question was: "If negligence on the part of the health care practitioner or health care provider is found, whether any negligence [on] the part of the patient was equal to or greater than the negligence on the part of the practitioner or provider." The panel unanimously answered this question, "No."

[¶ 5] Thereafter, the Smiths filed a medical malpractice complaint against Hawthorne in the Superior Court. Prior to trial, the Smiths moved to admit the entire findings of the prelitigation screening panel. They asserted that section 2857 is unconstitutional insofar as it allows only the finding on the second question to be presented to the jury. The court (*Jabar, J.*) denied the Smiths' motion to admit all of the panel's findings and ruled that section 2857 is constitutional.

[¶ 6] The first jury trial (*Mead, J.*) ended in a mistrial because the jury could not reach a verdict. In the second trial, the court told the jury that as a preliminary procedural step the case had gone to a medical malpractice screening panel that reviewed the Smiths' claim. The court further told the jury the names of the panel members, that the panel had conducted a summary hearing, and that it was not bound by the rules of evidence. Additionally, the court explained that the panel hearing was not a substitute for a full trial, that the same evidence that the jury heard may or may not have been presented to the panel, and that the jury was not bound by the panel findings. The court stated that the jury was to reach its own conclusions based upon all of the evidence. Finally, the court commented that the panel proceedings were confidential, which prevented the parties from introducing panel documents or presenting witnesses to testify about the panel. This commentary by the court was consistent with our recommendation in *Irish v. Gimbel*, 1997 ME 50, ¶ 12, 691 A.2d 664, 671. The court then said that Hawthorne's attorney would present the finding of the panel. The attorney stated to the jury: "The panel in this case unanimously concluded that the acts or omissions complained of by the Smiths were not the legal cause of the injuries that he has alleged." The jury issued a verdict in favor of Hawthorne. The Smiths then brought this appeal.

## II. THE STATUTORY SCHEME AND CASELAW

[¶ 7] Absent an agreement by all parties to bypass the prelitigation screening panel proceedings, before a plaintiff is permitted to file a medical malpractice action in a Maine court, the plaintiff must proceed before a prelitigation screening panel. 24 M.R.S. §§ 2853(5), 2903 (2005); *see also Powers v. Planned Parenthood*, 677 A.2d 534, 537–38 (Me.1996). The purpose of the panel process is "[t]o identify claims of professional negligence which merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit; and ... [t]o identify claims of professional negligence and to encourage early withdrawal or dismissal of nonmeritorious claims." 24 M.R.S. § 2851(1) (2005); *Sullivan v. Johnson*, 628 A.2d 653, 656 (Me.1993).

[¶ 8] When a medical malpractice claimant has filed a notice of claim, the Chief Justice of the Superior Court appoints a chair of the panel, who, in turn, chooses the other members of the panel, of whom one must be an attorney and another must

be a health care practitioner.[2] 24 M.R.S. § 2852 (2005). As in this case, the parties often proceed to discovery. A hearing is held at which the parties make presentations, and the rules of evidence do not apply. *Id.* § 2854(1). The burden is on the claimant to prove negligence and proximate causation by a preponderance of the evidence. *Id.* § 2855(2)(A). The panel chair is required to attempt mediation of the dispute, *id.* § 2854(2), but if that is unsuccessful, the panel makes findings by answering three questions:

A. Whether the acts or omissions complained of constitute a deviation from the applicable standard of care by the health care practitioner or health care provider charged with that care;

. . . .

B. Whether the acts or omissions complained of proximately caused the injury complained of; and

C. If negligence on the part of the health care practitioner or health care provider is found, whether any negligence on the part of the patient was equal to or greater than the negligence on the part of the practitioner or provider.

*Id.* § 2855(1).

[¶ 9] Use of unanimous panel findings is governed by 24 M.R.S. § 2857(1), which provides in pertinent part:

B. If the panel findings as to both the questions under section 2855, subsection 1, paragraphs A and B are unanimous and unfavorable to the person accused of professional negligence, the findings are admissible in any subsequent court action for professional negligence against that person by the claimant based on the same set of facts upon which the notice of claim was filed.

C. If the panel findings as to any question under section 2855 are unanimous and unfavorable to the claimant, the findings are admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed.

[¶ 10] If the answers to both the negligence and proximate cause questions are affirmative and unanimous, the defendant must enter into negotiations, and if the answers to either of those two questions are negative, the plaintiff must release the claim or "be subject to the admissibility of those findings under section 2847[ (1)(B) ]." *Id.* § 2858 (2005).

[¶ 11] If the plaintiff proceeds with a court action for medical malpractice after the panel has made its findings, the matter proceeds in the same fashion as other civil actions. At trial, however, there are limitations as to what may be said about the panel process because of the confidentiality requirement. *Id.* § 2857. All deliberations of the panel are confidential and privileged, as is the testimony of any expert before the panel. *Id.* § 2857(2). There are only three exceptions to the confidentiality requirement, and one is the provision that the findings of the panel, if unanimous, are admissible under the circumstances discussed above.[3]

[¶ 12] The confidentiality provisions of the statutory scheme have led to several opinions by this Court. All concerned a previous version of section 2857(1) that

---

**2.** Title 24 M.R.S. § 2852(2)(A), (3) (2005) authorizes either party to challenge the appointment of the chair and panel members.

**3.** The other two exceptions are found in 24 M.R.S. § 2857(1)(A)(1) and (2). Testimony or writings under oath may be used for impeachment, and a party who presented the evidence may agree to its use.

provided that when the findings were admissible they had to be presented "without explanation." 24 M.R.S.A. § 2857(1) (1990).[4] In the first opinion we said that section 2857 meant that there could be no explanations of the panel deliberations or proceedings, but that a court should "make a preliminary comment ... that clarifies that the panel process is merely a preliminary procedural step." *Sullivan,* 628 A.2d at 656.

[¶ 13] In the next case the plaintiff challenged the constitutionality of the "without explanation" portion of section 2857 as violating the Maine constitutional provision guaranteeing a right to a jury trial. *Irish,* 1997 ME 50, ¶ 7, 691 A.2d at 669 *(Irish I ).* We held that the "without explanation" requirement in section 2857 "withholds information that is essential to the jury's fact-finding role." *Id.* ¶ 11, 691 A.2d at 670. We stated that withholding information from the jury regarding the context of the panel proceedings "in the face of the highly prejudicial findings invited unprincipled evaluation and can only result in juror confusion." *Id.* We concluded that certain neutral information about the panel process was constitutionally required, and we interpreted the statute "to permit the disclosure of information about the prelitigation screening process sufficient to provide a rational basis for evaluation of the findings and to ensure the jury's role as the

final arbiter of the facts." *Id.* ¶ 13, 691 A.2d at 671.

[¶ 14] The plaintiffs in *Irish I* also claimed that their right to a jury trial was violated by the admission of the panel findings without their having the opportunity to impeach those findings by examining panel members or otherwise attacking the panel findings. *Id.* ¶ 7, 691 A.2d at 669. We rejected that contention. *Id.* ¶ 12, 691 A.2d at 671. We said that "[t]he constitutional deficiency lies in the lack of relevant neutral information, not the restriction on skillful advocacy." *Id.*

[¶ 15] The *Irish* case was retried in the Superior Court, and the plaintiffs again appealed, specifically challenging the admission of the unanimous adverse panel findings as unconstitutionally interfering with their right to a jury trial. *Irish v. Gimbel,* 2000 ME 2, ¶ 2, 743 A.2d 736, 737 *(Irish II ).* However, we said that the issue had already been raised and decided in *Irish I,* and we declined to address it further. *Id.* ¶ 5, 743 A.2d at 737.[5]

[¶ 16] While *Irish II* was pending, section 2857 was amended to delete the "without explanation" requirement. *Id.* ¶ 6 n. 1, 743 A.2d at 737; P.L.1999, ch. 523, § 4 (effective Sept. 18, 1999) (codified at 24 M.R.S. § 2857 (2005)). No other substantive amendments have been made to the statute since the *Irish* opinions.

---

4. The previous version of section 2857 provided that if the prelitigation screening panel findings are "[a]s to either question under section 2855 [negligence or causation], unanimous and unfavorable to the claimant, the findings, *without explanation,* shall be admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed." 24 M.R.S.A. § 2857(1)(B) (1990) (emphasis added). However, 24 M.R.S.A. § 2857 was amended by P.L.1999, ch. 523, § 4 (effective

Sept. 18, 1999) (codified at 24 M.R.S. § 2857 (2005)), and the "without explanation" restriction from the original law was removed.

5. Between the two *Irish* cases we also decided *Mason v. Torrey,* 1998 ME 159, 714 A.2d 790. There we held that the court's failure to give the neutral information to the jury required by *Irish I* was not obvious error when the plaintiff had not objected to the court's preliminary comments or final instructions. *Id.* ¶¶ 5, 7, 714 A.2d at 791–92.

## III.  DISCUSSION

[¶ 17] The Smiths contend that section 2857 violates their constitutional right to a jury trial.[6]  Specifically, they argue that because the court's application of section 2857(1)(B) and (C) resulted in giving the jury part, but not all, of the panel's findings, the jury was misled and its role as fact-finder was usurped.

[¶ 18] We review de novo the claim that section 2857 is unconstitutional.  *See Guardianship of K–M*, 2005 ME 8, ¶ 17, 866 A.2d 106, 112.  A statute is presumed constitutional, and a party challenging the constitutionality of a statute must show convincingly that the statute conflicts with the Constitution.  *Irish I*, 1997 ME 50, ¶ 6, 691 A.2d at 669.

[¶ 19] The precise challenge by the Smiths to the constitutionality of section 2857 was not present in *Irish I*. There the panel had reached a unanimous finding against the plaintiffs on the question of negligence.  *Id.* ¶ 2, 691 A.2d at 668. *Irish I* did not include the circumstance of a panel finding of negligence coupled with a finding of no causation.  *See id.* ¶ 2 n. 3, 691 A.2d at 668.  Thus, we were not presented in *Irish I* with the argument that admissibility of part, but not all, of the panel's findings was constitutionally impermissible.

[¶ 20] In *Irish I*, we held that the confidentiality provision of section 2857 violated the plaintiffs' constitutional right to a jury trial because it, as applied by the trial court, withheld "information that [was] essential to the jury's fact-finding role." *Id.* ¶ 11, 691 A.2d at 670.  The right to a jury trial is defined as "the right 'to have a determination made by the jury' on material questions of fact." *Id.* ¶ 8, 691 A.2d at 669 (quoting *Peters v. Saft*, 597 A.2d 50, 53 (Me.1991)).  We determined that the jury was "deprived of any and all information of the context in which the panel operates." *Id.* ¶ 11, 691 A.2d at 670.  We concluded that the lack of information combined with the "highly prejudicial findings" not only allowed but "invited" an evaluation by the jurors lacking in principle.  *Id.* We said that juror confusion would be the result. *Id.* We interpreted the statute to permit the trial court to provide preliminary comments and final instructions that would provide the jury with a basis "to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial." *Id.* ¶ 12, 691 A.2d at 671.  As so interpreted, we determined that the confidentiality provision was "consistent with the constitutional right of a trial by a jury." *Id.* ¶ 13, 691 A.2d at 671.

[¶ 21] In *Irish I*, we noted that the majority of courts considering the admission of panel findings have upheld prelitigation screening statutes against challenges that they violate the right to a jury trial. *Id.* ¶ 10, 691 A.2d at 670.  However, no cases from other jurisdictions have been called to our attention that address the precise issue presented in this case. That is likely because, so far as we have been able to discern, no other state permits a similar asymmetrical admission of panel findings.[7]  Unlike Maine, states with screening panels either forbid the admission of panel findings in a subsequent trial

---

6.  Contrary to Hawthorne's contentions, the Smiths have standing to challenge the constitutionality of 24 M.R.S. § 2857.  *See City of Auburn v. Mandarelli*, 320 A.2d 22, 26 (Me. 1974).

7.  For a summary of state medical malpractice laws, *see* Nat'l Conference of State Legislatures, State Med. Malpractice Tort Laws, Section Two, *at* http://www.ncsl.org/standcomm/sclaw/statelaws2.htm (Oct. 21, 2005) (copy on file with the Clerk of the Law Court).

or require that all findings be admitted. *See, e.g.,* MONT. CODE ANN. § 27–6–704(2) (2005) (declaring that the decision, reasoning, and basis for the panel's decision are not admissible); NEB. REV. STAT. § 44–2843 (2005) (stating that the report of the panel is admissible); *see also Prendergast v. Nelson,* 199 Neb. 97, 256 N.W.2d 657, 663 (1977) (also stating that the panel's report and any minority report are admissible).

[¶ 22] We conclude that the asymmetrical admission of panel findings violated the Smiths' constitutional right to a jury trial for the same reasons that giving the panel findings to the jury "without explanation" violated the Irishes' constitutional right to a jury trial. When there are findings favorable to both parties, the admission of only those findings favorable to one party distorts the jury's fact-finding role. The findings in favor of Smith, like the findings in favor of Hawthorne, were highly probative and relevant to the jury's determination of material questions of fact. The partial admission reduced the strength and persuasiveness of the Smiths' case to the jury and, at the same time, strengthened Hawthorne's case, thereby significantly infringing upon the Smiths' right to have facts determined by a jury.[8]

[¶ 23] Hawthorne argues that because she is not liable in a malpractice action unless both negligence and causation are proved, it makes sense to withhold the unfavorable finding on negligence unless there is also an unfavorable finding on causation. However, precisely because both negligence and causation have to be found by a jury for there to be liability, both panel findings are relevant to the jury's deliberations. Furthermore, both findings provide the jury with a basis "to understand the nature of the panel findings and to put the findings in context in evaluating all of the evidence presented at the trial." *Irish I,* 1997 ME 50, ¶ 12, 691 A.2d at 671.

[¶ 24] The jury was told only that the panel found that any acts or omissions by Hawthorne did not cause harm to Smith. Because of this, the jury could have been misled into believing that the panel found that Hawthorne was not negligent even though the panel unanimously found that she was. The partial admission of the panel's findings here, like the admission of the panel's findings without explanation in *Irish I,* invited unprincipled juror evaluation of the evidence that could only result in juror confusion. The panel's finding that Hawthorne was negligent was necessary to put into context its finding that Hawthorne's acts were not the proximate cause of Smith's injuries.

[¶ 25] We conclude that application of subsections 2857(1)(B) and (C) by the Superior Court, which denied the plaintiffs' request to admit the panel's findings on

---

8. The partial admission also disregards the rule of completeness embodied in our evidentiary rules. *See* M.R. Evid. 106 ("When a writing or recorded statement or part thereof is utilized in court by a party, ... [t]he court on motion of the adverse party may require the introduction at that time of the writing or recorded statement or any part thereof or any other writing or recorded statement which ought in fairness to be then considered."); *see also* M.R. Civ. P. 32(a)(4); *State v. Ryder,* 348 A.2d 1, 4 (Me.1975) (noting the widely recognized rule of evidence that "when part of an oral statement has been introduced by one party, the party-opponent may introduce the remainder of the statement, even though it is favorable to, or exculpatory as to, the party-opponent"). Additionally, witnesses are sworn to tell the truth, the *whole* truth, and nothing but the truth. We do not suggest that the evidentiary rule of completeness is required constitutionally, but the existence of the rule demonstrates the high regard the law holds for providing complete facts to the fact-finder.

negligence and comparative negligence and allowed in evidence only the panel's findings on causation, was unconstitutional and denied the Smiths their right to a jury trial under the Maine Constitution.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.

ALEXANDER, J., with whom DANA, J., joins, concurring.

[¶ 26] Throughout the course of this case, the parties, the Superior Court, and five justices of this Court, after thorough consideration, interpret subsections 2857(1)(B) and (C) to allow only certain unanimous panel findings to go to the jury. As interpreted and as applied, we have joined the Court's opinion that these subsections violate Smith's constitutional right to a fair jury trial.

[¶ 27] We write separately because, in our view, these subsections may be interpreted to avoid this result.

[¶ 28] Before addressing any constitutional argument in our role as an appellate court, we should first examine a statute to determine if it can be construed to be consistent with our Constitution. *Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291, 297–98 (plurality). As the plurality observed in *Rideout*:

Because we must assume that the Legislature acted in accord with due process requirements, if we can reasonably interpret a statute as satisfying those constitutional requirements, we must read it in such a way, notwithstanding other possible unconstitutional interpretations of the same statute.

*Id.*

[¶ 29] Accordingly, we have a duty to construe a statute to preserve its constitutionality in a manner that is compatible with the Legislature's intent if such a construction is "at all possible." *Town of Baldwin v. Carter*, 2002 ME 52, ¶ 9, 794 A.2d 62, 66–67. Thus, we must seek a reasonable interpretation of section 2857(1) that will satisfy constitutional requirements. *Irish v. Gimbel*, 1997 ME 50, ¶ 6, 691 A.2d 664, 669; *State v. Cropley*, 544 A.2d 302, 304 (Me.1988); *Bossie v. State*, 488 A.2d 477, 479 (Me.1985).

[¶ 30] The questions of admissibility of unanimous findings, within a panel report, that favor different parties and the capacity of each party to offer fewer than all of the unanimous findings into evidence are not explicitly addressed on the face of the statute. Thus, on this point, the statute is ambiguous. When a statute is ambiguous, we must look beyond the words of the statute to construe its meaning, considering the statute's history, underlying policy, our rules of construction, and other extrinsic factors to ascertain legislative intent. *Darling's v. Ford Motor Co.*, 2003 ME 21, ¶ 7, 825 A.2d 344, 346; *In re Wage Payment Litig.*, 2000 ME 162, ¶ 4, 759 A.2d 217, 221; *Arsenault v. Crossman*, 1997 ME 92, ¶ 7, 696 A.2d 418, 421.

[¶ 31] Section 2857(1), allowing parties to introduce before the jury unanimous findings of the prelitigation screening panel, was an essential element of the Legislature's comprehensive process for prelitigation panel screening of health professional malpractice cases. It was intended to induce parties to participate, in good faith, in the prelitigation screening process and to support the requirement that all other aspects of the prelitigation screening process be confidential. *See* 24 M.R.S. § 2857(2) (2005).

[¶ 32] Paragraphs B and C of section 2857(1), regarding admissibility of unanimous findings of prelitigation screening panels, read as follows:

B. If the panel findings as to both the questions under section 2855, subsection 1, paragraphs A and B are unanimous and unfavorable to the person accused of professional negligence, the findings are admissible in any subsequent court action for professional negligence against that person by the claimant based on the same set of facts upon which the notice of claim was filed.

C. If the panel findings as to any question under section 2855 are unanimous and unfavorable to the claimant, the findings are admissible in any subsequent court action for professional negligence against the person accused of professional negligence by the claimant based on the same set of facts upon which the notice of claim was filed.

[¶ 33] Paragraph B states that if panel findings as to both negligence and causation are unanimous and unfavorable to the defendant "the findings" are admissible in any subsequent malpractice trial. Paragraph C states that if the panel answers any question unanimously and unfavorably to the plaintiff, "the findings" are admissible in any subsequent malpractice trial. Paragraphs B and C each speak in terms of the admissibility of "the findings." The question is what are "the findings"? This statute can be reasonably construed to require submission to the jury of all unanimous findings, even when all "the findings" do not support the same party. This assures that the jury receives the most accurate information about the panel's unanimous findings that we stated was important in *Irish I,* 1997 ME 50, ¶ 12, 691 A.2d at 671. As the Court's opinion notes, *supra* ¶ 21, this approach to admission of panel findings is consistent with the practice in other states with medical malpractice screening panels.

[¶ 34] Paragraphs B and C are not duplicative if construed to allow admission of all unanimous findings. Paragraph B addresses the situation when the first two findings are unanimous and favorable to the claimant. Paragraph C addresses the situation when one or more findings are unanimous and favorable to a defendant. In each case, whether referencing two answers in B or, perhaps, just one answer in C, the statute speaks in the plural of "the findings" being admissible. This interpretation is consistent with the legislative plan favoring admissibility of unanimous findings and indicating two distinct situations where unanimous findings may be offered. Section 2857(1), reasonably interpreted, indicates that all unanimous findings are to be admitted in these situations.

[¶ 35] In our view, at least on remand, if either party wishes to offer the answers to one or more of the unanimous findings of the panel, either all should be admitted or none should be admitted.

LEVY, J., with whom SAUFLEY, C.J., and CLIFFORD, J. join, dissenting.

[¶ 36] Today, the Court extends our holding in *Irish v. Gimbel,* 1997 ME 50, 691 A.2d 664 (*Irish I*), beyond the scope of article I, section 20 of the Maine Constitution, and, in so doing, invalidates 24 M.R.S. § 2857(1)(C) (2005), a key provision of the Maine Health Security Act. Although the concluding paragraph of the Court's decision appears to state that section 2857(1)(C) is only unconstitutional *as applied* by the trial court, the net effect of the decision is to treat the section as unconstitutional *as written* because the result will compel the trial court to ignore the plain language of the statute. Because I conclude that the Court's constitutional analysis is contrary to the scope and purpose of article I, section 20, and that section 2857(1)(C) is a proper exercise of legislative authority, I respectfully dissent.

## I.  DISCUSSION

[¶ 37] I will address, in order, (A) the Legislature's purpose in enacting section 2857(1)(C);  (B) the constitutional guarantee of the right to a civil jury trial embodied in article I, section 20 of the Maine Constitution;  and (C) the application of article I, section 20 to section 2857(1)(C) and the circumstances of this case.

### A.  The Legislative Purpose of 24 M.R.S. § 2857(1)(C)

[¶ 38] The Court elects to take its cue from the absence of a similar "asymmetrical" statutory structure in other states, as opposed to examining the Legislature's specific, articulated purpose behind section 2857(1)(C).  However, as Justice Brandeis observed, "[i]t is one of the happy incidents of the federal system that a single courageous State may, if its citizens choose, serve as a laboratory;  and try novel social and economic experiments without risk to the rest of the country." *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting).  That other states have not chosen to adopt a similar standard should not bear on our consideration of the statute's constitutionality.

[¶ 39] The regime governing the admission of the findings of the prelitigation screening and mediation panels in subsequent court actions set forth in section 2857 is designed to "encourage [both] early resolution of [meritorious] claims prior to commencement of a lawsuit ... and ... early withdrawal or dismissal of nonmeritorious claims."  24 M.R.S. § 2851(A), (B) (2005).  This case concerns panel findings that fall within the ambit of section 2857(1)(C).  With respect to claims that a panel has found to be nonmeritorious, section 2857(1)(C) restricts admission of the panel's findings in any subsequent court action to "findings as to any question un-

der section 2855 [that] are unanimous and unfavorable to the claimant."

[¶ 40] In *Sullivan v. Johnson,* we explained that section 2857 is the means by which the Legislature seeks to advance a public policy that encourages the early resolution of medical malpractice claims:

The explicit purpose for the mandatory prelitigation screening and mediation panels is to identify claims of professional negligence that merit compensation and to encourage early resolution of those claims prior to commencement of a lawsuit or to encourage early withdrawal or dismissal of claims without merit.  The statutory mechanism for encouraging the settlement, withdrawal or dismissal of claims is set forth in 24 M.R.S.A. § 2857 (1990) which provides for the admission in evidence ... of unanimous panel findings as to the issues of negligence and causation.  Only when a litigant insists on proceeding to trial in the face of a unanimous and unfavorable panel finding does the statute contemplate the admission of the panel finding against a defendant who refuses to settle a meritorious claim or against a plaintiff who refuses to withdraw a claim without merit.  The legislature's intent to force final disposition of these claims short of trial is apparent on the face of this statute ....

628 A.2d 653, 656 (Me.1993) (internal citations omitted).  On a micro level, section 2857(1) encourages parties to settle claims in order to reduce costly medical malpractice litigation, and on a macro level, section 2857(1) is intended to mitigate the larger social and economic consequences of such litigation.  Barring the admission of a favorable panel finding in a split findings case is a key instrument of the Legislature's effort to implement these policies.

[¶ 41] Notwithstanding the clear legislative policy embodied in section 2857(1) and,

in particular, subsection (C)'s express reference to "panel findings as to any question under section 2855 [that] are unanimous and unfavorable to the claimant," the Court's constitutional analysis effectively rewrites section 2857(1)(C). As revised by the Court, section 2857(1)(C) requires the admission into evidence of both favorable and unfavorable panel findings in cases involving split findings. A claimant is therefore less prone to opt to "release the claim or claims based on the [panel's] findings without payment," 24 M.R.S. § 2858(2) (2005), knowing that the negative effect of the jury's receipt of an unfavorable finding will be mitigated by the favorable finding that accompanies it. This reworking of section 2857(1)(C) undermines the inducement to settle nonmeritorious medical malpractice claims that the statute was intended to achieve.

[¶ 42] The Court's analysis of section 2857(1)(C) occurs in a vacuum, divorced from any consideration of the statute's legislative purpose. This approach is perilous for several reasons. First, legislative power rests exclusively within the Legislative Branch, and that power is absolute except as limited by other provisions of the United States or Maine Constitutions. ME. CONST. art. IV, pt. 3, § 1; *see SC Testing Tech., Inc. v. Dep't of Envtl. Prot.*, 688 A.2d 421, 424 (Me.1996). We risk overstepping our institutional bounds as a coordinate branch of government when we invalidate an act of the Legislature without having weighed and accounted for the public policy the Legislature has sought to advance. Second, the Constitution entrusts the exclusive authority for the adoption of statutory law with the Legislature because it is the branch of government best suited to undertake the investigation, fact-finding, and analysis needed to establish policies that account for social interests that are much broader than the narrow, personal interests of the parties to a lawsuit.

Accordingly, the Legislature's determination of public policy is binding on the courts so long as it is within constitutional limits. *City of Belfast v. Belfast Water Co.*, 115 Me. 234, 241, 98 A. 738, 741 (1916). Finally, for the foregoing reasons, we exercise restraint in matters of public policy, and we invalidate acts of the Legislature only where a solid constitutional footing to do so exists.

[¶ 43] Accordingly, the question presented is whether the result reached by the Court—the invalidation of the plain language of a statute and the frustration of the legislatively-formulated public policy the statute is designed to implement—is compelled by article I, section 20, of the Maine Constitution. I believe that it is not.

## B. The Right to a Jury Trial Guaranteed by Article I, Section 20 of the Maine Constitution

[¶ 44] The right to a jury trial in civil cases is expressed in article I, section 20, of the Maine Constitution:

> In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced; the party claiming the right may be heard by himself or herself and with counsel, or either, at the election of the party.

ME. CONST. art. I, § 20 (emphasis added). The emphasized language contained in the first clause of article I, section 20, is descended from and similar to the corresponding provision in the Massachusetts Constitution:

> In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practised, the parties have a right

*to a trial by jury;* and this method of procedure shall be held sacred, unless, in causes arising on the high seas, and such as relate to mariners' wages, the legislature shall hereafter find it necessary to alter it.

MASS. CONST. pt. 1, art. XV (emphasis added).

[¶ 45] The Maine and Massachusetts constitutional provisions have historically been construed as guaranteeing the right to a trial by jury in civil cases unless it is demonstrated that such a right did not exist at the time of the adoption of each Constitution. *See N. Sch. Congregate Hous. v. Merrithew,* 558 A.2d 1189, 1190 (Me.1989) (stating that "our practice . . . is to find that there is such a right unless it is affirmatively shown that a jury trial was unavailable in such a case in 1820"); *Curcuru v. Rose's Oil Serv., Inc.,* 441 Mass. 12, 802 N.E.2d 1032, 1036–37 (2004) (recognizing a right to a jury trial corresponding to that extant in 1780 at the time of the adoption of the Massachusetts Constitution). Thus, Maine and Massachusetts's constitutional guarantees control the types of civil actions to which the right to a jury trial attaches.

[¶ 46] Except for our decision in *Irish I,* I have found no Maine or Massachusetts authority that suggests that either state's constitutional guarantee restricts the Legislature's power to control the mode of jury trials or the procedures that must be afforded once the right to a jury trial has been established. This absence of authority is consistent with the federal constitutional analogue contained in the Seventh Amendment. The Supreme Court· has stated that:

The Seventh Amendment, indeed, does not attempt to regulate matters of pleading or practice, or to determine in what way issues shall be framed by which questions of fact are to be submitted to a jury. Its aim is not to preserve mere matters of form and procedure but substance of right. This requires that questions of fact in common law actions shall be settled by a jury, and that the court shall not assume directly or indirectly to take from the jury or to itself such prerogative. *So long as this substance of right is preserved the procedure by which this result shall be reached is wholly within the discretion of the legislature . . . .*

*Walker v. New Mexico & S. Pac. R.R. Co.,* 165 U.S. 593, 596, 17 S.Ct. 421, 41 L.Ed. 837 (1897) (emphasis added).[9]

[¶ 47] The Supreme Court has continued to adhere to the understanding of the purpose and limits of the Seventh Amendment expressed in *Walker.* For example, in upholding the authority of the federal district courts to reduce the number of jurors in civil actions from twelve to six, the Court recognized in *Colgrove v. Battin* that the right to a jury trial guaranteed by the Seventh Amendment relates to "the substance of the common-law right of trial by jury, as distinguished from mere matters of form or procedure," and is not binding as to "the exact procedural incidents or details of jury trial according to the common law" when the Seventh Amendment was adopted in 1791. 413 U.S. 149, 156, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973) (quotation marks omitted). More recently, the Court reiterated that "[o]nly those incidents which are regarded as fundamental, as inherent in and of the essence of the

---

9. This view is more fully expressed in Austin W. Scott, *Trial by Jury and the Reform of Civil Procedure,* 31 HARV. L. REV. 669, 671 (1918), which was quoted approvingly by the Supreme Court in *Colgrove v. Battin,* 413 U.S. 149, 156 n. 11, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973).

system of trial by jury, are placed beyond the reach of the legislature" by the Seventh Amendment. *Tull v. United States,* 481 U.S. 412, 426, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987) (quotation marks omitted); *see also* 1 LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 3–32, at 619 (3d ed.2000).

[¶ 48] In *Irish I* we considered a constitutional challenge to the statute's requirement, since eliminated by legislative amendment, that the findings of the prelitigation screening and mediation panels be admitted at trial "without explanation." 1997 ME 50, ¶ 1, 691 A.2d at 667. We determined that this proscription on any explanation infringed on the right to a jury trial guaranteed by article I, section 20 of the Maine Constitution, because it would prevent the jury from receiving "information that is essential to the jury's fact-finding role," and that "[t]he total absence of information and the unexplained silence of plaintiffs' counsel in the face of the highly prejudicial findings invite[ ] unprincipled evaluation and can only result in juror confusion." *Id.* ¶ 11, 691 A.2d at 670. Accordingly, we preserved the statute's constitutionality by construing it as permitting "the disclosure of information about the prelitigation screening process sufficient to provide a rational basis for

evaluation of the findings and to ensure the jury's role as the final arbiter of the facts." *Id.* ¶ 13, 691 A.2d at 671. We also noted that section 2857 "is a legitimate exercise of legislative power consistent with the constitutional right of a trial by a jury," so long as the jury is informed as to how the panel arrived at its finding, the nonbinding nature of the finding, and the privileged and confidential nature of panel proceedings.[10] *Id.*

[¶ 49] Although our application of article I, section 20 of the Maine Constitution in *Irish I* may be viewed by some as a departure from the traditional understanding of the limited focus of the federal and state constitutional provisions guaranteeing the right to a jury trial, I do not. The decision can be reconciled with the traditional view that only the fundamental incidents of jury trials as they existed in 1820, in Maine's case, are beyond the reach of the Legislature because we determined in *Irish I* that the contextual information at issue was so "essential" to the jury performing its function, that absent the information juries would necessarily engage in "unprincipled evaluation" of evidence that "can only result in juror confusion." *Id.* ¶ 11, 691 A.2d at 670. In other words, the burden on the right to a jury trial imposed by the statute considered in *Irish I* was so severe that it

---

**10.** We explained in *Irish I:*

> The constitutional deficiency lies in the lack of relevant neutral information, not the restriction on skillful advocacy. We determine that a jury will be able to perform its function if the court makes preliminary comments and final instructions that provide the following information:
>
> 1) the panel process is merely a preliminary procedural step through which malpractice claims proceed;
> 2) the panel in this case consisted of (the name and identity of the members);
> 3) the panel conducts a summary hearing and is not bound by the Rules of Evidence;

> 4) the hearing is not a substitute for a full trial and may or may not have included all of the same evidence that is presented at the trial;
> 5) the jury is not bound by the finding(s) and it is the jurors' duty to reach their own conclusions based on all of the evidence presented to them; and
> 6) the panel proceedings are privileged and confidential. Consequently, the parties may not introduce panel documents of present witnesses to testify about. the panel proceedings, and they may not comment on the panel finding(s) or proceedings except to reiterate the information in 1 through 6.
>
> 1997 ME 50, ¶ 12, 691 A.2d at 671.

undermined "the essence of the system of trial by jury" and was therefore "beyond the reach of the legislature." *Tull,* 481 U.S. at 426, 107 S.Ct. 1831 (quotation marks omitted).

[¶ 50] In *Irish I* and again today, the Court has applied article I, section 20 without any weighing of the public interests at stake. This approach, in effect, vaults the right to a jury trial over all other constitutional rights and interests, and deviates substantially from our application of the constitutional guarantees of due process and equal protection, both of which compel us to consider and weigh the competing private and public interests at stake whenever the constitutionality of a legislative act is challenged. *See State v. Stade,* 683 A.2d 164, 166 (Me.1996). To the extent we construe article I, section 20 as imposing limits on legislative power, the limits must be reserved for those truly exceptional situations where it has been clearly demonstrated that the statute substantially undermines a fundamental and essential aspect of the system of trial by jury. For the reasons that follow, I conclude that this case does not present such an exceptional situation.

C. The Application of Article I, Section 20 of the Maine Constitution to 24 M.R.S. § 2857(1)(C) (2005)

[¶ 51] The favorable panel finding regarding negligence that Smith wished to bring to the jury's attention is not in the nature of the contextual information at issue in *Irish I* that we found to be essential for a jury to perform its function. The Legislature's decision, embodied in section 2857(1)(C), to restrict the admission of findings to a panel's unfavorable finding in split-finding cases such as this does not burden a claimant's right to a jury trial so severely as to undermine the essence of the system of trial by jury. "It cuts off no

defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury." *Irish,* 1997 ME 50, ¶ 9, 691 A.2d at 670 (quoting *Meeker v. Lehigh Valley R.R. Co.,* 236 U.S. 412, 430, 35 S.Ct. 328, 59 L.Ed. 644 (1915)). It is substantially similar, in effect, to the discretion judges exercise to exclude from evidence what otherwise might be relevant findings of an administrative agency where "all the evidentiary matter before the [state agency] could be presented to the jury ...." *Hall v. W. Prod. Co.,* 988 F.2d 1050, 1058 (10th Cir. 1993); *see also Tiemann v. Santarelli Enters., Inc.,* 486 A.2d 126, 130–31 (Me.1984) (affirming trial court's exclusion from evidence of relevant investigative report pursuant to confidentiality provision of Maine Human Rights Act); *Paolitto v. John Brown E. & C., Inc.,* 151 F.3d 60, 65 (2nd Cir.1998); *Denny v. Hutchinson Sales Corp.,* 649 F.2d 816, 821–22 (10th Cir. 1981).

[¶ 52] I am not persuaded that the burden on the right to a jury trial from the exclusion of the favorable panel finding in this case approaches the severity of that considered in *Irish I.* Unlike *Irish I,* where the excluded information was described as "essential" to jury performance and necessarily results in "unprincipled evaluation" of evidence that "can only result in juror confusion," here the Court describes the favorable panel finding as "relevant to the jury's deliberations," and states that the jury "could have been misled into believing that the panel found that Hawthorne was not negligent even though the panel unanimously found that she was." *Supra* ¶ 24. The Court's less-certain tone in this case about the potential that jurors will be misled is apt because unlike the complete bar to the introduction of contextual information at issue in *Irish I,* here, section 2857(1)(C) does not impose a complete bar to the introduction of evi-

dence on the issue of the physician's negligence. The jury received substantial evidence from both parties regarding the negligence issue. As measured by the length and complexity of the comprehensive evidence the parties introduced at trial on the issue of whether Hawthorne was negligent, the jury's receipt of the unfavorable panel finding on proximate cause—encompassing a minute or two of a four day trial—does not stand out as a prominent facet of the body of evidence the jury evaluated. One is hard-pressed to deduce from this record that the jury was misled by the court's exclusion of the favorable panel finding pursuant to section 2857(1)(C).

## II.  CONCLUSION

[¶ 53] It is not within our prerogative to judge the wisdom of the statute or the public policy that underlies it absent a violation of the United States or Maine Constitutions. The Legislature's decision to bar the introduction into evidence of a favorable panel finding in a split finding case is supported by a determination of public policy involving a subject of great public concern. *See Gafner v. Down East Comty. Hosp.*, 1999 ME 130, ¶ 42, 735 A.2d 969, 979. Because this legislated decision does not substantially undermine a fundamental and essential aspect of the jury trial process, it has not been demonstrated that the Legislature has acted beyond its reach in violation of article I, section 20.

[¶ 54] We should defer to the Legislature's judgment in this case, and adhere to the admonition that "[w]hether wisdom or unwisdom resides in the [legislative] scheme ... is not for us to say.... Our concern here, as often, is with power, not with wisdom." *Helvering v. Davis*, 301 U.S. 619, 644, 57 S.Ct. 904, 81 L.Ed. 1307 (1937). Based on the plain language of section 2857(1)(C) and the public policy it

represents, the Superior Court's judgment should be affirmed.